OPINION
{¶ 1} Appellant, Jeremy E. Parker, appeals from the December 30, 2003 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for possession of drugs.[1]
 {¶ 2} On January 27, 2003, appellant was indicted by the Ashtabula County Grand Jury on one count of possession of drugs, a felony of the third degree, in violation of R.C. 2925.11. Appellant entered a plea of not guilty at his arraignment on February 3, 2003.
 {¶ 3} On February 18, 2003, appellant filed a motion to suppress evidence. Appellee, the state of Ohio, filed a memorandum in opposition to appellant's motion to suppress on March 31, 2003. On May 7, 2003, appellant filed a response.
 {¶ 4} A suppression hearing was held on May 9, 2003. At that hearing, Deputy Mark Allen ("Deputy Allen") with the Ashtabula County Sheriff's Department ("ACSD") testified that around 8:00 a.m. on November 6, 2002, he was patrolling businesses in the vicinity of Route 45 and Interstate 90, particularly the Comfort Inn, in response to reported thefts from vehicles in adjacent parking lots. Deputy Allen observed a Ford F250 pickup truck, which was equipped with a camper, parked very close to the Comfort Inn. No license plate was displayed on the front part of the truck. Upon inspection, Deputy Allen noticed that the rear door of the camper was ajar, smelled a strong odor of propane gas, and saw weapons in the bunk area of the camper. He was very concerned due to the volatile nature of propane gas.
 {¶ 5} Deputy Allen knocked on the side of the camper but received no response. He looked through the open door but did not see anyone inside. Deputy Allen observed a lighted flame from a burner on a stove and went inside the camper to turn it off. He then ran a check on the Indiana license plate which revealed that the vehicle was registered to John Slocum ("Slocum"), a co-defendant of appellant's. Slocum was known by Deputy Allen and others to be associated with the manufacture of methamphetamine. Upon learning of Slocum's identity and suspecting a methamphetamine lab in operation, Deputy Allen immediately called for back up assistance.
 {¶ 6} According to Deputy Allen, he witnessed Richard Liddy ("Liddy"), another co-defendant of appellant's, exit the back door of the Comfort Inn. Deputy Allen knew that Slocum and Liddy had been associated together with Todd Cumberledge ("Cumberledge") in manufacturing and using methamphetamine. Liddy, who was wearing a backpack, walked towards the camper carrying a power pack used to jump batteries. Prior to reaching the camper, Liddy saw Deputy Allen, dropped the power pack, turned and began to run away. Deputy Allen ordered Liddy to stop and he complied. Deputy Allen arrested Liddy on two outstanding warrants. Upon patting Liddy down and searching his backpack, Deputy Allen found marijuana, a knife, lighters, lighter fluid, a Comfort Inn key card, and packets of pseudophedrine, a main ingredient in the manufacture of methamphetamine. With respect to the key card, Deputy Allen indicated that Liddy could not remember which room he was staying in.
 {¶ 7} Deputy Allen next observed appellant come from around the corner of the Comfort Inn from the same side that Liddy emerged. Despite the fact that it was cold outside, appellant was wearing a t-shirt, jeans, and no shoes. Upon seeing the patrol cars, appellant immediately turned and began to head back into the Comfort Inn. Deputy Allen asked appellant to stop and he complied. Deputy Allen asked appellant to place his hands on the building, which he did, and Deputy Allen observed a large pair of scissors in the back of his jean pockets. Appellant was arrested for carrying a concealed weapon ("CCW"), however, that charge was later dismissed. Appellant also had in his possession two Comfort Inn key cards but claimed that he did not know what room he was staying in. Another deputy informed Deputy Allen that appellant was on probation for possession of methamphetamine and cocaine out of Dooley County, Georgia.
 {¶ 8} As other deputies arrived, they contacted the manager of the Comfort Inn, Mel Daughenbaugh ("Daughenbaugh"). The deputies advised Daughenbaugh of their discoveries in the parking lot and what they suspected may be occurring inside a room at the motel. Daughenbaugh scanned the key cards taken from Liddy and appellant, which belonged to room 222, registered to appellant. Daughenbaugh gave the deputies a master key card to room 222. The deputies went to the room, knocked twice, announced their presence, but received no response. Deputy Allen utilized the master key and attempted to open the door but could feel someone pushing the door back against him. The deputies forced their way into the room and found Slocum and a young woman. Deputy Allen testified that he observed methamphetamine, funnels, aluminum foil, and various types of containers, items commonly used in the process of manufacturing methamphetamine.
 {¶ 9} Lieutenant Joseph Bernardo ("Lieutenant Bernardo") with the ACSD was present at the scene and testified that he also suspected that there may have been a methamphetamine lab in the motel room due to his observations of the vehicle and individuals in the parking lot. Lieutenant Bernardo indicated that his department had been aware for a very long time that individuals manufacturing methamphetamine in the county made it out of the backs of their vehicles as well as rented motel rooms. Lieutenant Bernardo stated that methamphetamine labs cause concern for public safety due to the toxic and volatile nature of the ingredients and manufacturing process.
 {¶ 10} Pursuant to its May 15, 2003 judgment entry, the trial court overruled appellant's motion to suppress.
 {¶ 11} On June 19, 2003, appellant filed a motion to dismiss, alleging a violation of his right to a speedy trial. On June 26, 2003, appellee filed a response in opposition to appellant's motion to dismiss. A hearing was held on June 27, 2003. Pursuant to its July 7, 2003 judgment entry, the trial court overruled appellant's motion to dismiss. On September 23, 2003, appellant withdrew his plea of not guilty and entered a plea of no contest.
 {¶ 12} Pursuant to its December 30, 2003 judgment entry, the trial court sentenced appellant to a one year prison term and suspended his driver's license for six months. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 13} "[1.] The trial court erred when overruling [a]ppellant's motion to dismiss for violating [a]ppellant's right to a speedy trial.
 {¶ 14} "[2.] The trial court erred when overruling [a]ppellant's motion to suppress."
 {¶ 15} In his first assignment of error, appellant argues the trial court erred by overruling his motion to dismiss because the state failed to bring him to trial within the 270 day timeframe set forth under R.C. 2945.71(C)(2). We agree.
 {¶ 16} "The Sixth Amendment right to a speedy trial * * * is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." UnitedStates v. MacDonald (1982), 456 U.S. 1, 8.
 {¶ 17} R.C. 2945.71 provides in pertinent part that:
 {¶ 18} "(C) A person against whom a charge of felony is pending:
 {¶ 19} "* * *
 {¶ 20} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 21} "* * *
 {¶ 22} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 23} On November 6, 2002, appellant was arrested and charged with illegal manufacture of drugs, possession of drugs, and CCW. Appellant was incarcerated on the charges from November 6, 2002 until January 24, 2003 (79 days), when he posted a personal recognizance bond.
 {¶ 24} A jury trial was originally scheduled to commence on February 19, 2003. However, on February 18, 2003, appellant filed a motion to suppress evidence. The trial court conducted a hearing on May 9, 2003, and overruled appellant's motion to suppress on May 15, 2003. The period from January 25, 2003, the day after appellant's bond was posted, through February 17, 2003, the day before appellant filed his motion to suppress, counted as twenty-four days. Speedy trial time tolled from February 18, 2003, the day appellant filed his motion to suppress, through May 15, 2003, the date that the trial court overruled the motion. See, State v. Burdick (May 26, 2000), 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264.
 {¶ 25} Another thirty-four days were chargeable to appellee from May 16, 2003 to June 19, 2003, the date that appellant filed his motion to dismiss. Speedy trial time tolled during the pendency of appellant's motion to dismiss, which was heard by the trial court on June 27, 2003, and overruled on July 7, 2003. SeeState v. Evans, 11th Dist. No. 2003-T-0132, 2005-Ohio-1787, at ¶ 38. Thus, seven days were chargeable to appellee, from July 8, 2003, the day after the trial court overruled appellant's motion to dismiss, through July 14, 2003, the day before appellant moved for a continuance.
 {¶ 26} A jury trial was scheduled for July 22, 2003. However, pursuant to appellant's July 15, 2003 motion, the trial date was continued to August 5, 2003. Thus, speedy trial time tolled from July 15, 2003 through August 5, 2003. On July 23, 2003, the trial court continued the August 5, 2003 trial date to September 23, 2003, due to the necessity that appellant's and Liddy's cases be tried together and the fact that the suppression hearing in Slocum's case was set for August 29, 2003. Pursuant to R.C.2945.72(H), speedy trial time tolled from August 5, 2003 until September 23, 2003. On September 23, 2003, appellant changed his plea from not guilty to no contest.
 {¶ 27} Generally, the triple count provision of R.C.2945.71(E) applies only to defendants held in jail in lieu of bail solely on the pending charge. State v. Hubbard (1995),104 Ohio App.3d 443, 445, citing, State v. MacDonald (1976),48 Ohio St.2d 66, 70. However,
 {¶ 28} "[w]here more than one charge has arisen from a single transaction and the multiple charges share a common litigation history from arrest onward, incarceration on the multiple charges will be considered incarceration on the `pending charge' for purposes of R.C. 2945.71(E)." State v. Parsley (1993),82 Ohio App.3d 567, 571.
 {¶ 29} In the instant matter, appellant was arrested on November 6, 2002. As a result of and subsequent to this arrest, appellant was charged with illegal manufacture of drugs, possession of drugs, and CCW. On November 15, 2002, the matter came before the Ashtabula Municipal Court for a preliminary hearing on the felony charges and a pretrial conference for the misdemeanor CCW offense. While the felony charges were eventually bound over to the grand jury and the municipal court retained jurisdiction over the CCW offense, the charges arose from the same transaction and possessed a limited, but nonetheless common, post-arrest litigation history. Accordingly, appellant was entitled to receive 237 days credit for the seventy-nine days he was initially incarcerated on the multiple charges. Adding the additional sixty-five days of "straight time" to which appellant was entitled after he posted bond, yields a sum of 302 days. Because appellant was not brought to trial within the 270 days required by R.C. 2945.71, we hold his right to a speedy trial was violated.
 {¶ 30} We will briefly respond to the dissent's position. In our view, the dissent construes the rule in Hubbard, supra, too narrowly. Relying on State v. Coleman (1989),45 Ohio St.3d 298, 304, the dissent posits appellant was not entitled to the triple-count provision of R.C. 2945.71(E) for the initial seventy-nine days in which he was incarcerated because he was being held on multiple charges pending separate trials.
 {¶ 31} In Coleman, the state court obtained jurisdiction over the defendant from the federal prison system. After he was returned to Hamilton County on January 7, 1985, the defendant faced two separate capital indictments each requiring a separate trial. The first trial ended on or about May 6, 1985 and his second trial commenced on May 20, 1985. While the defendant had been held for over ninety days awaiting trial on the second capital charge, the court held that his right to a speedy trial was not violated because he was being held on multiple charges pending separate trials. Accordingly, the defendant was not being held in lieu of bail solely on the pending charge.
 {¶ 32} The facts of Coleman are distinguishable from the current case. In Coleman, the defendant was being held on two separate state capital murder indictments, each of which resulted from separate occurrences and had separate factual backgrounds. See, State v. Coleman (Oct. 7, 1987), 1st Dist. No. C-850490, 1987 Ohio App. LEXIS 9048 and State v. Coleman (Dec. 10, 1986), 1st Dist. No. C8-50340, 1986 Ohio App. LEXIS 9770. Here, however, the separate charges on which appellant was being held arose from a single transaction or occurrence. Thus, although appellant was held on multiple charges pending separate trials, these facts alone cannot be dispositive of our speedy trial analysis. See,Parsley, supra.
 {¶ 33} Under the circumstances, there were multiple charges pending separate trials. However, all charges were factually related and a product of the same transaction or occurrence and
had a common post-arrest litigation history. Added together, appellant must be given credit for 302 days in which he was held before being brought to trial, thirty-two days outside the window allotted by statute. Accordingly, appellant's first assignment of error has merit and appellant's conviction is therefore vacated.
 {¶ 34} Because appellant's first assignment of error disposes of the instant appeal, his second assignment of error is moot and need not be addressed.
 {¶ 35} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is hereby reversed and appellant's conviction vacated.
O'Toole, J., concurs,
Ford, P.J., dissents with a Dissenting Opinion.
[1] Additionally, appellant appeals from the May 15, 2003 judgment entry, overruling his motion to suppress.