OPINION
{¶ 1} In the instant matter, appellant, Ronald A. Dach, appeals from various judgment entries entered by the Trumbull County Court of Common Pleas. For the reasons herein, we affirm in part, reverse in part, and remand the matter for re-sentencing.
 {¶ 2} On February 16, 2004, Rachel Shinosky and Brian Joyce, pharmacists for the Rite Aid pharmacy located in Cortland, Ohio, were working when a prescription was dropped off by an unknown individual. The prescription called for 60 tablets of OxyContin and was issued by Dr. Kenneth Green of the Crystal Clinic in Akron, Ohio. The patient identified on the script was "Dennis James." Mr. James' prescription insurance information was already logged into Rite Aid's database so Ms. Shinosky filled the prescription.[1]
 {¶ 3} On March 2, 2004, at 7:20 p.m., a man identifying himself as "Dennis James" entered the Rite Aid pharmacy in Cortland, Ohio and asked pharmacist Brian Joyce to fill a prescription for 60 OxyContin tablets issued by Dr. K.A. Green. Mr. Joyce testified the prescription appeared "phony" so he tried to contact the issuing physician to verify its authenticity.[2] However, the clinic in question (the Crystal Clinic in Akron, Ohio) was closed. Mr. Joyce filled the prescription, but carefully observed the presenting party. Mr. Joyce also left a note for the morning pharmacist to contact the Crystal Clinic and check on the script's validity. Mr. Joyce returned to work on March 5, 2004 and learned "Dennis James" was not a patient at the Crystal Clinic and Dr. Green did not write the prescription. Mr. Joyce then contacted the Cortland police.
 {¶ 4} On March 11, 2004, again at the Cortland Rite Aid, an unidentified female attempted to have a prescription filled for 60 OxyContin tablets for a patient by the name of "Rhonda Cummings." The prescription was also written on a Crystal Clinic pad. Mr. Joyce refused to fill the prescription and the woman left the store. The prescribing physician on the prescription was Dr. C.J. Klonk who, according to Dr. Kenneth Green, had left the Crystal Clinic in 2003.[3]
 {¶ 5} Nancy James, appellant's ex-wife, worked for Forum Health and was enrolled in Premier Medical Insurance Company's prescription drug program. Nancy was married to appellant for 14 years, but removed him from her insurance immediately after their divorce. Mrs. James married Dennis James in 2000 and included Mr. James on her insurance after their marriage. Evidence established that neither Nancy nor Dennis James were ever patients at the Crystal Clinic.[4]
 {¶ 6} Cortland Police Detective David Morris obtained the suspicious prescriptions issued to "Dennis James". Following an interview with Mrs. James, appellant became the focus of Detective Morris' investigation. Mrs. James recognized appellant's handwriting on the phony prescriptions. She also indicated appellant had used her social security number to obtain drugs in the past and had also forged her name on checks.
 {¶ 7} Detective Morris subsequently provided Brian Joyce a driver's license photo of Dennis James. Joyce stated the Mr. James in the photo was not the customer for whom he filled the OxyContin prescription on March 2, 2004. On March 10, 2004, Mr. Joyce positively identified appellant from a six-man photo array. Detective Morris arrested appellant on March 15, 2004. At trial, Mr. Joyce testified he was 100 percent certain appellant was the party who passed the forged prescription on March 2, 2004.
 {¶ 8} After his arrest, appellant provided several handwriting samples and stated he did not pass the forged prescriptions. On March 24, 2004, appellant was released on bond. Detective Morris, continuing his investigation, obtained a print-out of Dennis and Nancy James' prescription history from Rite Aid's database and discovered other prescriptions filled for them at other Rite Aid pharmacies in Trumbull County: On January 10, 2004, the Howland Rite Aid on Elm Road filled two prescriptions for "Nancy James" for Soma and OxyContin. Mrs. James testified she had filled neither prescription, but knew appellant took Soma at one time.
 {¶ 9} The Howland Rite Aid additionally processed a prescription for OxyContin for "Nancy James" on February 3, 2004 and a prescription for sixty OxyContin tablets for "Dennis James" on February 8, 2004. Moreover, on January 19, 2004, a pharmacist at the Champion Rite Aid filled a prescription for sixty OxyContin tablets for "Dennis James."
 {¶ 10} David Hall, a forensic document examiner, compared appellant's handwriting samples with the various prescriptions and concluded appellant was the writer of the prescriptions. On June 18, 2004, Detective Morris attempted to serve additional arrest warrants on appellant at his home address but was unsuccessful. On June 30, 2004, Morris received an informant's tip that appellant was driving a maroon Toyota Corolla which was parked at 395 North Mecca Street in Cortland, Ohio.
 {¶ 11} After waiting near the vehicle for some fifty minutes, Morris observed appellant approaching the car. Detective Morris advised appellant he was under arrest and appellant attempted to flee. However, after running a mere ten feet, appellant stopped. Appellant was apprehended with the keys to the Corolla. A groundskeeper for the apartment complex advised Detective Morris that the vehicle should be removed if the owner of the vehicle was neither a resident nor a visitor. Detective Morris called for a tow truck and conducted an inventory search of the vehicle. During the search, Detective Morris recovered a torn prescription from the Crystal Clinic.
 {¶ 12} Following indictments in five separate terms of the grand jury with five separate case numbers, appellant pleaded not guilty to all counts. The state moved to consolidate all charges for trial. The charges were re-numbered as follows: Counts 1 through 8, forgery, felonies of the fifth degree in violation of R.C. 2913.31(A)(1) and (C)(1)(a) and (b); Counts 9 and 10, illegal possession of drug documents, felonies of the fourth degree in violation of R.C. 2925.23(B)(1) and (F)(1); Count 11, aggravated possession of drugs, a felony of the second degree in violation of R.C. 2925.11(A) and (C)(1)(c); Counts 12 through 16, complicity to aggravated possession of drugs, felonies of the second degree in violation of R.C. 2923.03(A)(2) and (F) and R.C.2925.11(A) and (C)(1)(c); and Count 17, complicity to attempted aggravated possession of drugs, a felony of the third degree in violation of R.C. 2923.03(A)(2) and (F), R.C. 2923.02(A) and (E), and R.C. 2925.11(A) and (C)(1)(c).
 {¶ 13} On August 27, 2004, appellant filed a motion to establish his competency to stand trial. On January 4, 2005, after psychological evaluation, appellant was deemed competent to stand trial. On January 21, 2005, appellant moved the court to suppress evidence obtained from his vehicle after his arrest on June 30, 2004. Further, on January 28, 2005, appellant filed a motion to dismiss for failure to bring him to trial within the statutory speedy trial window. On February 1, 2005, defense counsel renewed the motion to dismiss which the trial court denied. Appellant's motion to suppress evidence was denied on February 2, 2005 and the matter proceeded to jury trial. On February 7, 2005, appellant was found guilty on all charges except Count 10, illegal possession of drug documents. With respect to Counts 11, 12 through 16, and 17, the jury made findings that the amount of drugs was five times the bulk amount but less than fifty times the bulk amount of OxyContin.
 {¶ 14} On April 12, 2005, appellant was sentenced to a term of six months for Counts 1 through 8, to be served concurrently with one another; six months for Count 9, to be served concurrent with the sentences for Counts 1 through 8; four years as to each of Counts 11 through 16, to be served concurrent with one another, but consecutive to the sentence for Counts 1 through 9; and a mandatory term of four years as to Count 17, to be served concurrently to the sentences for Counts 11 through 16. In total, appellant was sentenced to an aggregate term of four and one half years.
 {¶ 15} Appellant now appeals and asserts four assignments of error for our consideration:
 {¶ 16} "[1.] The trial court erred by denying the appellant's motion to dismiss.
 {¶ 17} "[2.] The trial court erred in denying appellant's motion to suppress evidence obtained by the state from the warrantless search of appellant's vehicle.
 {¶ 18} "[3.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 19} "[4.] The trial court's imposition of maximum and consecutive sentences upon appellant based upon findings not made by a jury nor admitted by appellant is contrary to law and violates appellant's rights to a jury trial and due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 20} Appellant's first assignment of error challenges the trial court's denial of his motion to dismiss for violation of R.C. 2945.71, Ohio's Speedy Trial statute.
 {¶ 21} R.C. 2945.71(C)(2) provides that a party who has been charged with a felony offense must be brought to trial within 270 days after his arrest. Further, pursuant to R.C. 2945.71(E), each day during which an accused is held in jail in lieu of bail on a pending charge will be counted as three days.
 {¶ 22} Here, appellant argues he was held for a total of 445 days in violation of his right to a speedy trial. In support, appellant draws the following timeline:
 {¶ 23} On March 15, 2004, appellant was arrested and held until March 24, 2004, when he was released on bond. Appellant asserts he was held in lieu of bail for these 10 days and was therefore entitled to have 30 days count against his speedy trial time.
 {¶ 24} From March 24, 2004 through June 29, 2004, a total of ninety-seven days, appellant avers he was out on bond.
 {¶ 25} On June 30, 2004, appellant was arrested on additional charges. From July 1, 2004 through September 1, 2004, a total of sixty-three days, appellant remained incarcerated. Appellant asserts, notwithstanding the new charges for which he was arrested, he was still entitled to the triple count provision of R.C. 2945.71(E); as such, another 189 days would be chargeable to the state.
 {¶ 26} Finally, appellant contends forty-three days elapsed between December 9, 2004, (the date he alleges he was found competent to stand trial), and January 21, 2005, (the date his motion to suppress evidence was filed). Again, appellant maintains he was entitled to a triple count which would result in an additional 129 days chargeable to the state.
 {¶ 27} When appellant's figures are added together, one arrives at a figure of 445 days, an amount well beyond the 270 day statutory speedy trial window.
 {¶ 28} We believe appellant's calculations exhibit certain fundamental infirmities. First, appellant was not entitled to the triple-count provision after his arrest on June 30, 2004. As a general rule, the triple-count provision applies only to defendants held in jail in lieu of bail solely on the pending charge. State v. Parker, 11th Dist. No. 2004-A-0004,2005-Ohio-6908, at ¶ 27, citing, State v. Hubbard (1995),104 Ohio App. 3d 443, 445. This court has previously explained:
 {¶ 29} "The reasoning is that if the accused would remain incarcerated even after the pending charge was dropped, the [triple-count] provision should not apply." State v. Keyse
(Sept. 9, 1988), 11th Dist. No. 12-122, 1988 Ohio App. LEXIS 3647, at 5; see, also, Hubbard, supra, at 3.
 {¶ 30} However, "[w]here more than one charge has arisen from a single transaction and the multiple charges share a common litigation history from arrest onward, incarceration on the multiple charges will be considered incarceration on the `pending charge' for purposes of R.C. 2945.71(E)." State v. Parsley
(1993), 82 Ohio App.3d 567, 571; see, also, Parker, supra, at ¶ 28.
 {¶ 31} Here, appellant's initial arrest occurred on March 15, 2004 as a result of passing a forged prescription to a Rite Aid in Cortland, Ohio on March 2, 2004. On June 30, 2004, appellant was arrested by the Champion Police for, inter al., passing a forged prescription at a Rite Aid in Champion, Ohio on or about January 19, 2004. The incidents leading to the two separate arrests occurred nearly three months apart in two separate jurisdictions. Accordingly, the acts leading to the two respective arrests did not arise from a single transaction and the multiple charges, while ultimately tried together pursuant to Crim.R. 13, did not share an immediate "common litigation history from arrest onward." After his arrest on June 30, 2004, appellant was no longer entitled to triple credit for speedy trial purposes because he was never held in jail, in lieu of bail, solely on the pending charge.[5]
 {¶ 32} Furthermore, a review of the record demonstrates appellant fails to consider the periods for which the statutory speedy trial time had tolled due to actions of his own engineering. Specifically, on May 28, 2004, appellant filed a motion for discovery to which the state responded on June 1, 2004. Speedy trial time is tolled under R.C. 2945.72(E) until the state responds. State v. Brown, 98 Ohio St.3d 121, 124, 2002-Ohio-7040; see, also, State v. Benge (Apr. 24, 2000), 12th Dist. No. CA99-05-095, 2000 Ohio App. LEXIS 1782, at 3-4. As we do not concern ourselves with specific hours and minutes when calculating speedy trial time, we believe the foregoing rule implies that speedy trial time is tolled until the date of the state's response and thus the speedy trial clock shall resume on that date. Here, while discovery was pending, the speedy trial clock tolled for four days, from May 28 through May 31.
 {¶ 33} Next, on August 27, 2004, appellant filed a motion to establish his competency to stand trial. Pursuant to R.C.2945.72(B), the time within which an accused must be brought to trial is tolled from the date the accused files a motion challenging his or her competency to stand trial until the date the court makes a finding of competency. State v. Palmer,84 Ohio St.3d 103, 1998-Ohio-507, paragraph one of the syllabus; see, also, State v. Parker (Oct. 9, 1998), 11th Dist. No. 97-T-0116, 1998 Ohio App. LEXIS 4845, at 6. After a forensic evaluation was completed, appellant was found competent to stand trial on January 4, 2005. Hence, appellant's speedy trial time was tolled from August 27, 2004 until January 3, 2005, an additional 129 days.
 {¶ 34} Finally, on January 21, 2005, appellant filed his motion to suppress evidence which was denied after a hearing on February 2, 2005. It is well settled that filing such a motion will toll the time in which a defendant must be brought to trial until the date the trial court rules on the motion. See, e.g.,State v. Burdick (May 26, 2000) 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264, at 20. As a result, appellant's speedy trial time was tolled twelve days (January 21 through February 1). When added together, the speedy trial clock was tolled for a total of 145 days (4 + 129 + 12).
 {¶ 35} From the foregoing observations, appellant's speedy trial time can be calculated in the following manner: Appellant was arrested on March 15, 2004 and released on bond on March 24, 2004. Because the day of arrest is not to be included when computing the time within which a defendant must be brought to trial, appellant was entitled to triple credit for the nine days he spent in jail in lieu of bail on the pending charge, i.e., between March 16, 2004 and March 24, 2004, a total of 27 days.State v. Steiner (1991), 71 Ohio App.3d 249, 250-251.
 {¶ 36} The speedy trial clock commenced running on March 25, 2004. Appellant remained out on bond until he was arrested again on June 30, 2004, a total of 98 days. During this period, however, the statutory clock tolled for four days when appellant filed for discovery (beginning May 28, 2004 and ending May 31, 2004). Therefore, between March 25 and June 30, a total of ninety-four days elapsed against the state.
 {¶ 37} After his June 30, 2004 arrest, appellant was held in jail until his trial date on February 2, 2005. However, the statutory clock tolled for significant periods during this time. Specifically, on August 27, 2004, appellant filed his motion for competency; accordingly, a total of 57 days was charged against the state between July 1, 2004 and August 26, 2004. The court ruled on appellant's motion on January 4, 2005 and on that date, the clock ran until January 21, 2005, the date on which appellant filed his motion to suppress. During this period, an additional seventeen days were charged to the state. On February 2, 2005 the trial court overruled appellant's motion to suppress and on the same date, trial began. In total, 195 days had elapsed on appellant's speedy trial time (27 + 94 + 57 + 17). Accordingly, appellant was brought to trial well within the statutory window.
 {¶ 38} Appellant's first assignment of error is overruled.
 {¶ 39} Appellant's second assignment of error challenges the trial court's denial of his motion to suppress evidence. The evidence obtained from the search (and seizure) in question, i.e. a partially torn prescription from Crystal Clinic, was used to form the basis of Count Ten charging appellant with "illegal processing of drug documents." The jury acquitted appellant of this charge. At oral argument, appellant conceded that any error arising from the trial court's denial of his motion to suppress would be harmless. Accordingly, appellant's second assignment of error is overruled.
 {¶ 40} In his third assignment of error, appellant asserts his convictions are against the manifest weight of the evidence.
 {¶ 41} "`In determining whether the verdict was against the manifest weight of the evidence, `* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'"State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 14-15, quoting, State v. Davis (1988),49 Ohio App.3d 109, 113.
 {¶ 42} The determination of witness credibility is primarily left to the trier of fact who is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses. State v. Kyser (Aug. 10, 2000), 7th App. Dist. 98 CA 144, 2000 Ohio App. LEXIS 3687, at 16-17.
 {¶ 43} Under his third assignment of error, appellant points out that drugs were never found on his person, in his vehicle, or at his residence. As such, appellant argues, the actual forged prescriptions provided the only probative evidentiary nexus between him and the crimes of which he was convicted. Appellant accordingly assails the reliability of the evidence put forth by David Hall, the state's handwriting expert.[6]
 {¶ 44} The Ohio Supreme Court has recognized that persons skilled in handwriting analysis may offer expert opinions regarding handwriting comparisons. State v. Loza,71 Ohio St.3d 61, 77, 1994-Ohio-409. Here, Mr. Hall was properly qualified as an expert. He testified to his employment as a forensic scientist for the Questioned Documents Division of BCI. Mr. Hall stated he had specialized training in handwriting analysis under the supervision of the senior document examiner at BCI. Further, he attended the Secret Service document school, the FBI document school, and has continued his education via workshops and other seminars as a member of the Midwest Forensic Science Association. Mr. Hall testified he had worked with questioned documents for fourteen years and, during the course of any given year, he likely analyzed "thousands" of documents.
 {¶ 45} In the current matter, Mr. Hall compared the handwriting on the forged prescriptions and writing samples submitted by appellant and concluded appellant's sample writings matched the script on the prescriptions. He testified:
 {¶ 46} "A. In the process of examination, * * * using magnification, a side by side comparison, looking at the handwriting, the comparing, the internal parts of the handwriting, the beginning strokes, the ending strokes, connecting strokes, formation of the characters and letters. So it was through this side by side comparison I was able to come to an opinion.
 {¶ 47} "Q. And were you able to reach an opinion to a reasonable scientific certainty?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. And what was that opinion?
 {¶ 50} "* * *
 {¶ 51} "A. * * * It was my opinion that the writer of those samples from Ronald Dach wrote these questioned prescription forms."
 {¶ 52} Defense counsel cross-examined Mr. Hall regarding the imprecise nature of handwriting analysis and underscored that there is no formal college degree offered in handwriting analysis. Counsel also pointed out that handwriting can vary within an individual according to general environmental factors, e.g., stress, handwriting surface, etc.
 {¶ 53} The jury was able to evaluate Mr. Hall's testimony in light of defense counsel's cross-examination and had very little conflicting evidence to resolve. The jury found Mr. Hall's testimony credible and we do not think it lost its way in doing so. It is also worth pointing out that Brian Joyce, the pharmacist who dispensed the March 2, 2004 Oxycontin prescription, identified appellant as the individual who passed the forged prescription with 100 percent certainty. Mr. Joyce testified that, when he received the prescription, it "looked phony." As a result, he carefully observed appellant, committing his face to memory, while filling the script.
 {¶ 54} When the evidence is viewed in its entirety, we believe the jury did not clearly lose its way thereby creating a manifest miscarriage of justice. Hence, we hold appellant's conviction is supported by the weight of the evidence.
 {¶ 55} Appellant's third assignment of error is without merit.
 {¶ 56} Appellant's fourth assignment of error challenges the sentences the trial court imposed upon him. Specifically, appellant argues the trial court erred in sentencing him to serve maximum and consecutive sentences based upon findings neither made by the jury nor admitted by the defendant. See, Blakely v.Washington (2004), 542 U.S. 296.[7]
 {¶ 57} Appellant was convicted on sixteen of the seventeen counts set forth in the charging instrument: eight counts of forgery (Counts 1 through 8), felonies of the fifth degree; one count of illegal processing of drug documents (Count 9), a felony of the fourth degree; six counts of complicity to aggravated possession of drugs (Counts 11 through 16), felonies of the second degree; and one count of complicity to attempted aggravated possession of drugs (Count 17), a felony of the third degree.
 {¶ 58} Based upon these convictions, the trial court sentenced appellant to an aggregate term of four and one-half years: The Court judgment entry reads:
 {¶ 59} "* * * the defendant [shall] serve a prison term of six (6) months on each count for Counts 1 thru [sic] 8, sentences to be served concurrently to each other; six (6) months on Count 9, to be served concurrently with sentences imposed in Counts 18; a mandatory four (4) years on each count for Counts 11 thru [sic] 16, sentences to be served concurrently to each other, but consecutively to the sentences imposed in Counts 1-9, and a mandatory term of four (4) years on Count 17, sentence to run concurrently to sentence imposed in Count 1-16, for an aggregate term of incarceration of 4-1/2 years, of which (4) years is mandatory."
 {¶ 60} Appellant was sentenced to the shortest prison terms for his felony four and five convictions, i.e. six months on each respective conviction. The court ordered these sentences to be served concurrently. Sentencing for fourth and fifth degree felonies is governed by R.C. 2929.13(B)(1) and (2).
 {¶ 61} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court held R.C. 2929.13(B) does not violateBlakely. The court pointed out that the statute has no presumption in favor of community control and, in effect, a court could impose a prison term for felonies of the fourth and fifth degree without making any findings of the sort found in R.C.2929.13(B)(1)(a) through (i). As the statute does not require the sentencing court to make additional findings of fact before increasing a penalty for an offense of the fourth or fifth degree felony level, the statute falls outside the parameters ofBlakely. Id. at ¶¶ 68-70. R.C. 2929.13(B) does not violateBlakely and we therefore find no error in this aspect of appellant's sentence.
 {¶ 62} Next, appellant was subject to mandatory prison terms for his felony two and three convictions. See, R.C. 2929.13(F). Under R.C. 2929.14(A)(2), a party convicted of a second degree felony is subject to a term of imprisonment between two and eight years. Under R.C. 2929.14(A)(3), a party convicted of a third degree felony is subject to a prison term between one and five years.[8] For each felony two and three count of which appellant was convicted, the trial court sentenced him to four years. As no judicial findings are required for imposing mandatory prison terms, Foster's holding is not implicated. Again, we find no error in this aspect of the court's sentence.
 {¶ 63} However, the court ordered the four year sentence to run consecutive to the six month sentence. In Foster, the court held R.C. 2929.14(E)(4), which governs the imposition of consecutive sentences, violates Blakely. Specifically, the court stated:
 {¶ 64} "because the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or stipulated to by a defendant, R.C.2929.14(E)(4) violates principles announced in Blakely" Id. at ¶ 67.
 {¶ 65} The court severed R.C. 2929.14(E) from the sentencing statutes based on its finding that Blakely rendered it unconstitutional. Therefore, in accordance with Foster, we reverse and vacate appellant's sentence for a new hearing.
 {¶ 66} With this in mind, we note appellant challenged only the consecutive nature of his sentence. According to State v.Saxon, ___ Ohio St.3d ___, 2006-Ohio-1245:
 {¶ 67} "An appellate court may only modify, remand, or vacate a sentence for an offense that is appealed by the defendant and may not modify, remand, or vacate the entire multiple-offense sentence based upon an appealed error in the sentence for a single offense." Id. at paragraph three of the syllabus.
 {¶ 68} While we addressed the court's sentences in their entirety, we did so in the interest of underscoring the constitutionality of R.C. 2929.13(B) and R.C. 2929.13(F). In relation to this analysis, the individual sentences on each particular conviction stand. Appellant's sentence is reversed and vacated solely upon the trial court's imposition of consecutive sentences. On remand, the trial court shall determine whether to impose consecutive sentences in light of Foster's proclamations or permit appellant's sentences to run concurrently.
 {¶ 69} Appellant's fourth assignment of error is sustained.
 {¶ 70} Based upon the foregoing, the various judgments are affirmed in part, and reversed and remanded in part: the trial court's judgment denying appellant's motion to dismiss, its judgment entry denying appellant's motion to suppress, and its judgment entry on the jury's verdict are affirmed. However, the trial court's judgment entry on sentence is reversed and vacated and the matter remanded for re-sentencing. The various decisions appealed from the Trumbull County Court of Common Pleas are therefore affirmed in part, reversed in part, and appellant's sentence is vacated and the cause is remanded for proceedings consistent with the foregoing opinion.
Donald R. Ford, P.J., Diane V. Grendell, J., concur.
[1] When prescribed medications, Mrs. James testified she and Mr. James generally filled them at Rite Aid. Once a customer's information was entered into the Rite Aid computer system, he or she was only required to present a prescription and his or her date of birth to have the prescription filled.
[2] Mr. Joyce testified OxyContin is generally prescribed twice a day. However, the script in question indicated the patient should take the medication every 4 to 6 hours.
[3] Dr. Kenneth Green, a physician at the Crystal Clinic, testified Dr. Klonk left the clinic in 2003 and his name was subsequently removed from the prescription pads. Dr. Green indicated, however, that in September 2000, an unknown quantity of prescription pads was taken from the Crystal Clinic. At that time, Dr. Klonk's name was on the prescription pads.
[4] Dr. Green also testified the Jameses were not his patients and he never signed the prescriptions at issue (one of the forged prescriptions was signed "Kevin Green," while his name is "Kenneth Green"). In fact, he stated in his 16½ years of practice, he had written only 2 prescriptions of OxyContin.
[5] Appellant relies upon this court's analysis in State v.Grover (Sept. 25, 1998), 11th Dist. No. 97-A-0021, 1998 Ohio App. LEXIS 4534, to support his position that he is entitled to triple-count credit on all post-June 30, 2004 time he was held in jail in lieu of bail. However, in Grover we stated that an additional charge is subject to the same statutory limitations period applied to an original charge where the new charge arises from the "`same facts as did the original charge and the state knew of such facts at the time of the initial indictment.'" Id., at 7, quoting State v. Clay (1983), 9 Ohio App.3d 216. Here, the charges were joined. The state consequently tried all the charges within a time period measured by the earliest arrest, i.e. March 15, 2004. Accordingly, Grover does not operate to support appellant's triple-count argument.
[6] Appellant also attacks the reliability of his ex-wife's testimony identifying the writing on the forged documents as his handwriting. However, counsel leveled no objection to this testimony at trial and therefore this argument was waived. Even had the issue been preserved, we have previously held "a lay witness may furnish an expression on handwriting comparison if [she] shows a long time familiarity with the person's penmanship." City of Mentor v. Riskin (Dec. 3, 1999) 11th Dist. No. 98-L-203, 1999 Ohio App. LEXIS 5758, at FN 2. Appellant and his ex-wife were married for 14 years, a sufficiently long time to develop the necessary familiarity for appellant's ex-wife to testify on the matter.
[7] Appellant's contention is partially inaccurate, i.e., he was not ordered to serve a maximum sentence on any of the counts of which he was convicted.
[8] The only discretion the court possessed regarding the mandatory sentences was the number of years appellant would serve in prison. In exercising this discretion, the court was required to evaluate the seriousness and recidivism factors set forth in R.C. 2929.12. See, e.g. State v. Alexander, 6th Dist. No. L-04-1243, 2005-Ohio-4429, at ¶ 12.