[Cite as *State v. Horn*, 2026-Ohio-1920.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF RAVENNA, | CASE NO. 2025-P-0079 |
| Plaintiff-Appellee, | Criminal Appeal from the<br>Municipal Court, Ravenna Division |
| - vs - | |
| MICHAEL PAUL HORN, | Trial Court No. 2023 TRC 08433 R |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: May 26, 2026
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor; *Theresa M. Scahill* and *Heaven DiMartino*, Assistant Prosecutors, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

MATT LYNCH, P.J.

{¶1} Appellant, Michael Paul Horn, appeals the judgment of the Portage County Municipal Court, Ravenna Division, sentencing him to 180 days in jail, with 135 days suspended, on a merged count of driving while under the influence of alcohol or drugs ("OVI"), and 6 days in jail on one count of failing to stop after an accident. After careful consideration of Horn's assignments of error challenging the manifest weight of the evidence and the denial of his motion in limine, as well as a review of the record and the pertinent law, we affirm the judgment of the municipal court.

{¶2} On August 23, 2023, the Ohio State Highway Patrol cited Horn with five offenses: Count 1: OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a); Count 2: refusal to submit to a chemical test with a prior OVI conviction within 20 years, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(2); Count 3: driving under suspension, a first-degree misdemeanor, in violation of R.C. 4510.11; Count 4: failure to stop after an accident, a first-degree misdemeanor, in violation of R.C. 4549.02; and Count 5: failure to control, a minor misdemeanor, in violation of R.C. 4511.202.

{¶3} The following day, in the municipal court, Horn pleaded not guilty at his arraignment and the court set a personal recognizance bond. On October 17, 2023, Horn failed to appear for a pretrial hearing and the court issued a warrant for Horn's arrest. On February 24, 2025, Horn filed a "notice of availability." The court cancelled the bench warrant since Horn was in prison serving an unrelated sentence and set the matter for trial.

{¶4} On September 17, 2025, a jury trial was held at which the State called eyewitness Mikell Riddle and Ohio State Highway Patrol Troopers Abraham and Whitacre. The defense called Horn's mother, Billie Lowers, and Horn's friend, David Case, to testify.

{¶5} Prior to jury voir dire, defense counsel made an oral motion in limine to exclude the video from the dash and body cameras of the troopers. More specifically, counsel argued the video was highly prejudicial because Horn used profanity, including racial slurs. The State contended the video was highly probative of impairment (an essential element of the OVI counts), no field sobriety tests were conducted due to Horn's "rambunctious" behavior, and a jury instruction could be given limiting the jury's review of the video to signs of impairment. The trial court denied defense counsel's motion, finding

Case No. 2025-P-0079

the video was highly probative and agreeing with the State that a limiting jury instruction could be given. During voir dire, defense counsel explained the segment of the video with Horn's offensive behavior and questioned the potential jurors whether they could be fair in their judgment of impairment. None of the potential jurors indicated otherwise.

{¶6} Riddle testified she was driving down Riddle Rd., which is named after her family, to go to her mother's house. As she approached the end of Riddle Rd., where it intersects with the Route 5/Route 14 bypass, she observed a van drive across the lanes of traffic and onto a grassy hill, where it came to a stop approximately 50 feet from her. Riddle observed the only person in the van was a male driver. She watched the man, later identified as Horn, exit the van, stumble down the hill, and begin walking east down Route 5. She testified, "He was literally walking out in traffic, stumbling back. Just zigzagging." Riddle, who had worked as a bartender for 30 years, further testified, "As a bartender, you know when people are under the influence of something." She and another bystander called the Ohio State Highway Patrol, who arrived on the scene approximately five minutes later.

{¶7} Trooper Abraham, who was training under Trooper Whitacre that day, received a dispatch to respond to the incident. When they arrived, Trooper Abraham observed Horn walking east in the left shoulder of the westbound lane on Route 5. Horn was stumbling between walking in the lane of traffic and walking in the shoulder. It struck Trooper Abraham as odd that Horn was walking on such a busy road in the rain at approximately 6:57 p.m. while on his cellphone. The troopers approached Horn, and in addition to Horn "stumbling around," they observed Horn's speech was slow and slurred, and his eyes were bloodshot and glassy. Once the troopers believed Horn was the driver of the crashed van, they patted him down, finding the keys to the vehicle, and drove him

Case No. 2025-P-0079

back to the crash site. Horn told the troopers he was not doing anything wrong, and he was just walking home.

{¶8} Throughout Trooper Abraham's testimony the video from the dash and body cameras was played for the jury. Defense counsel renewed the motion in limine and objected to the portion where Horn was using profanities and offensive language. In one segment of the video, Horn stated either "I was" or "I will" "driving my van home."

{¶9} Trooper Abraham explained that upon arresting Horn, they decided to transport him to the Portage County Jail because he was "very difficult and belligerent with us to the point where we couldn't do any standard field sobriety tests on him." They could not take him to the Highway Patrol post for processing and release him to his family in that condition. At the jail, the troopers read Horn the BMV 2255 form and asked Horn to take a breathalyzer test, which he refused. Trooper Abraham signed the form, indicating Horn had refused and noting in the required box Horn's refusal to sign.

{¶10} Trooper Whitacre testified that when he and Trooper Abraham arrived at the scene, he observed a white van off the south side of the roadway up an embankment. The driver was not at the scene, and several bystanders were directing them to head east. They continued driving and came upon Horn, who was stumbling back and forth between the shoulder and the lane of travel. They drove Horn back to the van, which was less than a mile away. Trooper Whitacre confirmed Trooper Abraham's testimony that they decided to arrest Horn and take him to the county jail based on his behavior, where he refused a breathalyzer test.

{¶11} After the State rested, the defense made a Crim.R. 29 motion for judgment of acquittal, challenging the sufficiency of the evidence as to whether Horn was driving the van. The court denied the motion since a jury could find Horn had been driving from

Case No. 2025-P-0079

the State's evidence that he was seen by a witness and had the keys to the vehicle in his pocket when he was searched.

{¶12} Lowers, Horn's mother, testified that it was pouring down rain on the day of the incident, August 23, 2023. She knew that Horn was not going to be home that evening and that he had hired someone at the bar to drive him, his son, and a friend, Dave Case, because they had been drinking alcohol.

{¶13} Case testified that he, Horn, and Horn's son went out for dinner and drinks. They drove in Horn's van to Chelsea's on the River in Cuyahoga Falls, where they "had too many drinks." Horn paid $50 to someone at the bar to drive them to Wing Warehouse, which was also in Cuyahoga Falls. At that point, Case walked home because he lived nearby. Horn's son also went to Case's house later in the evening. The man they hired to drive them was supposed to drive Horn in Horn's van to Lowers' house. On cross-examination, Case testified the man they hired to drive them was not intoxicated and seemed responsible. While he could not recall the conversation they had with the man, he was sure they "found out where he works, what he did for a living, stuff like that." He could not recall another time they had hired someone to drive them around due to intoxication. Case was not sure who was driving and who was in Horn's van at the time of the accident.

{¶14} The trial court denied defense counsel's renewed Crim.R. 29 motion challenging the sufficiency of the evidence. The parties stipulated for the jury that Horn was previously convicted of an OVI offense.

{¶15} The jury found Horn guilty of Counts 1 and 2, the two OVI counts, and Count 4, failure to stop after an accident. Before the jury trial, the State had moved to dismiss Count 3, driving under suspension, and the court dismissed Count 5, failure to control.

{¶16} One month later, at a sentencing hearing, the court found the two OVI counts merged and sentenced Horn on the merged count to 180 days in jail, with 135 days suspended, and six days in jail on the count of failing to stop after an accident. The court ordered the sentences to run concurrent with the unrelated felony prison sentence Horn was already serving.

{¶17} Horn timely appealed and raises two assignments of error for our review:

{¶18} "[1.] Appellant's convictions were against the manifest weight of the evidence.

{¶19} "[2.] The trial court erred by denying appellant's motion in limine."

## Manifest Weight of the Evidence

{¶20} In his first assignment of error, Horn challenges the manifest weight of the evidence, contending the State's evidence as to who was driving Horn's vehicle was not as persuasive as the defense's evidence, which demonstrated by way of Lowers' and Case's testimony that Horn had not been operating the vehicle at the time of the incident.

{¶21} "[W]eight of the evidence addresses the evidence's effect of inducing belief. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" (Internal citation omitted.) *State v. Wilson*, 2007-Ohio-2202, ¶ 25. "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits

as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175. *Accord State v. Cameron*, 2025-Ohio-3192, ¶ 12 (11th Dist.).

{¶22} Horn attempts to argue that his version of events, i.e., he hired someone to drive him around and thus was not driving, was more persuasive than the State's evidence of an eyewitness who observed Horn drive off the road and up an embankment, stumble out of the vehicle alone, and proceed down the highway, stumbling between the shoulder and the lane of traffic. The State's evidence further showed the troopers collected Horn and returned him to the site of the incident, finding the vehicle's keys in Horn's pocket.

{¶23} Whether Horn had hired someone earlier in the evening to drive him is irrelevant to whether Horn was driving at the time of the incident. Both Lowers and Case testified they did not know whether Horn had been driving the vehicle. The defense did not introduce any evidence, circumstantial or direct, that Horn was not driving. Thus, as our review indicates, it was reasonable to conclude from the State's evidence that Horn was the operator of the motor vehicle, and the jury's verdict is not against the manifest weight of the evidence. *See, e.g. State v. Morgan*, 2023-Ohio-3317, ¶ 17-18 (1st Dist.) (finding the evidence did not weigh heavily against conviction on the element of operating a motor vehicle where it was reasonable to infer from the evidence presented at trial on the location of the vehicle and the appellant's statements that the appellant had, immediately prior to his arrest, operated the vehicle).

{¶24} Contrary to Horn's argument, "a conviction is not against the manifest weight of the evidence [merely] because the trier of fact believed the state's version of events over the defendant's version." *State v. Ferrell*, 2020-Ohio-6879, ¶ 59 (10th Dist.). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). This is because the trier of fact "is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 2006-Ohio-3428, ¶ 42 (11th Dist.). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 2012-Ohio-6127, ¶ 58 (11th Dist.).

{¶25} Because the jury's verdict is not against the manifest weight of the evidence and there is no indication the jury lost its way in resolving conflicts in the evidence, Horn's first assignment of error is not well taken.

**Traffic Stop Videos**

{¶26} In his second assignment of error, Horn contends the trial court erred by denying his motion in limine to exclude the troopers' dash and body camera video because it was highly prejudicial due to his use of offensive and profane language.

{¶27} A determination as to the admissibility or exclusion of evidence is a matter within the sound discretion of the trial court. *Ambrose v. USAA Gen. Indemn. Co.*, 2022-Ohio-2629, ¶ 123 (11th Dist.). "Indeed, '[t]he issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury.'" *Id.*, quoting *Columbus v. Taylor*, 39 Ohio St.3d 162, 164 (1988). "Consequently, a reviewing court will not reverse a lower court's determination as to the admissibility of evidence absent

an abuse of discretion." *Id.* An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004). Where the decision to admit evidence involves solely a question of law, our standard of review is de novo.

{¶28} "All relevant evidence is admissible, Evid.R. 402, unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, Evid.R. 403(A)." *State v. McKelton*, 2016-Ohio-5735, ¶ 144.

{¶29} In *State v. Crotts*, 2004-Ohio-6550, the Supreme Court of Ohio explained as follows:

> As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." *Black's Law Dictionary* (8th Ed. 1999). Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is *unfairly* prejudicial is excludable.

> "'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.'" *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001), quoting Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3.

(Emphasis in original.) *Id.* at ¶ 23-24.

{¶30} There is no question the video in this case was relevant evidence because it is probative on whether Horn was impaired, an essential element of the OVI counts. Further, the video was shortened from an hour to approximately 15-20 minutes, and defense counsel discussed the inflammatory and offensive remarks made by Horn on

Case No. 2025-P-0079

one of the video segments to the jury during voir dire, with not one potential juror indicating an issue. In addition, the court gave a jury instruction that "the evidence does not include any statements or parts of a video that were stricken by the Court or [the jury was] instructed to disregard." No further limiting jury instruction was requested by defense counsel.

{¶31} And, while the video was prejudicial, as all evidence against a defendant necessarily is, it was not "unfairly prejudicial." For example, in *State v. Geasley*, 85 Ohio App.3d 360 (9th Dist. 1993), the Ninth Appellate District determined that the appellant's overall demeanor, including his use of profanity and verbal threats towards the officer, was relevant to whether the appellant was under the influence of alcohol. *Id.* at 373. In determining the trial court erred in excluding those portions of the videotape on the basis of relevancy and unfair prejudice, the appellate court aptly remarked, "it would be the rare case in which an 'accused's own actions or language' would be unfairly prejudicial. . . . There is a difference between being unfavorable to the defendant and being prejudicial." *Id. See also State v. Cole*, 1995 WL 551110, *3 (3rd Dist. Sept. 13, 1995) ("[e]vidence of appellant's conduct and belligerent remarks to the arresting officers is relevant to the issue of whether he was under the influence and the admission of this evidence is not unfairly prejudicial"); *State v. Baskt*, 30 Ohio App.3d 141, 144 (1st Dist. Feb. 19, 1986) (while defendant's remarks hurt his defense, it was not unfair to admit the evidence because "evidence about an accused's own actions or language, so long as it is relevant to the essential elements of the offense, cannot be 'unfairly prejudicial'").

{¶32} Thus, we cannot say the municipal court abused its discretion by admitting the video. Horn's second assignment of error is not well taken.

{¶33} Having determined Horn's assignments of error are without merit, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit.  It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE MATT LYNCH

JUDGE EUGENE A. LUCCI,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0079