**The STATE of Ohio, Appellee,**

v.

**FERRIER, Appellant.**

[Cite as *State v. Ferrier* (1995), 105 Ohio App.3d 124.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15–94–13.

Decided July 10, 1995.

---

*Michael Kirkendall,* City Law Director, for appellee.

*Johnson Law Office* and *Scott R. Gordon,* for appellant.

SHAW, Judge.

Defendant-appellant, Ronald Ferrier, appeals from the judgment of the Van Wert County Municipal Court finding him guilty of speeding, in violation of R.C. 4511.21.

Defendant asserts the following two assignments of error:

"I. The trial court erred to the prejudice of the defendant in finding that the evidence established that the arresting officer was qualified to operate the K–55 radar device.

"II. The trial court erred in finding the defendant guilty of speeding for the reason that the court's finding is against the manifest weight of the evidence and contrary to law."

The record indicates that on July 31, 1994 at approximately 8:40 p.m., defendant was clocked by Trooper Susan Reiff of the Ohio State Highway Patrol traveling seventy m.p.h. in a fifty-five m.p.h. zone on U.S. 30 in Van Wert County, Ohio. Trooper Reiff pulled defendant over and cited him for traveling in excess of the posted speed limit in violation of R.C. 4511.21.

In determining defendant's rate of speed, Trooper Reiff utilized a K–55 radar meter. At the time Trooper Reiff issued the citation, she had been commissioned as a state trooper for approximately three weeks. Nevertheless, Trooper Reiff was working the cruiser with senior officer, Trooper Cynthia Drake, a ten-year veteran of the highway patrol as part of a "coach-pupil" training program.

Defendant pled not guilty to the charge set forth in the citation and on August 23, 1994, the case proceeded to a bench trial. The record contains the testimony of Trooper Reiff, Trooper Drake, and defendant. Reiff and Drake both testified that they visually observed defendant exceeding the posted speed limits and that upon clocking defendant's vehicle, the K–55 radar gun registered a seventy m.p.h. reading. After the close of the evidence, the trial court found the defendant guilty as charged and ordered him to pay a $15 fine and court costs.

In his first assignment of error, defendant argues that the trial court erred in finding that Trooper Reiff was qualified to operate the K–55 radar meter. The record indicates that at the close of the state's case, defendant moved the court to dismiss the complaint on the basis that Trooper Reiff was inexperienced and lacking in formal training in the operation of the K–55 radar meter. Noting merely that a prima facie case had been presented, the trial court overruled the appellant's motion to dismiss, without addressing Reiff's qualifications to operate the radar unit.

Moreover, in announcing the verdict at the conclusion of the trial, the record is not entirely clear as to what the trial court's findings were regarding the radar testimony. For example, at one point, the trial court stated:

"We have an interesting question here because its clear that Trooper Reiff is grossly unqualified in terms of her knowledge of the operation of the K–55. I'm sure Officer Drake [Trooper Reiff's supervisor] grimaced several times yesterday in terms of the inaccuracies and admissions made by Trooper Reiff[.] * * *"

Subsequently, the trial court indicated that its verdict was ultimately based upon the fact that "the [defendant's] vehicle was visually observed to be the greatest speed vehicle." In our view, these comments by the trial court indicate that the court may have disregarded the evidence concerning the use of the radar unit, based in part upon Reiff's inexperience. On the other hand, additional remarks by the trial court at the conclusion of the trial would seem to indicate that the court did not expressly reject the radar testimony.

In any event, despite Reiff's inexperience with the radar unit, the record establishes that Drake personally performed all of the necessary calibrations of the equipment at the beginning and end of the shift. Furthermore, Drake testified that she had personally observed the entire incident including Reiff's use of the radar unit and that Reiff had "done things properly" in utilizing this equipment to make the stop. Finally, there is no evidence in the record whatsoever which would contradict either Drake's or Reiff's testimony on this point or which otherwise indicates that this radar device was either not functioning properly or improperly used in making this stop. Under these circumstances, we believe any rejection of the radar testimony by the trial court would be erroneous as against the weight of the uncontroverted evidence.

■ Accordingly, the first assignment of error is overruled for the reason that the radar evidence in this case was competent based upon the supporting testimony of Drake.

In his second assignment of error, defendant contends that the conviction entered against him was against the manifest weight of the evidence. The proper standard to be utilized by a reviewing court when considering the sufficiency of evidence is set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503, where the Supreme Court of Ohio stated:

"[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Thus, in reviewing both weight and sufficiency of the evidence, the same test is applied. The verdict will not be

disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts."

Upon review of the record, we find that any rational trier of fact could have found that the essential elements of the offense of traveling in excess of the posted speed limit were proven beyond a reasonable doubt. As previously noted, in addition to the radar testimony discussed above, the record contains the testimony of Reiff and Drake, who both testified that they visually observed the appellant's vehicle traveling faster than the posted speed limit. We reiterate that this evidence is uncontroverted, because even though the appellant testified in his own defense, he made no statement as to the speed of his vehicle. Accordingly, defendant's second assignment of error is hereby overruled.

In summary, both of defendant's assignments of error are overruled and the judgment of the Van Wert County Municipal Court is affirmed.

*Judgment affirmed.*

Thomas F. Bryant, P.J., concurs.

Evans, J., concurs separately.

Evans, Judge, concurring separately.

While I agree that the decision of the trial court should be affirmed, I cannot agree with the statements of the majority concerning the application of the radar testimony in this case. The majority takes the premature position that the radar testimony must be considered by the court in reaching its decision.

I say the majority is premature because the appellant has not put that question to this court. The assignment of error advanced by the appellant is that the trial court erred in finding that the officer was qualified to operate the radar device. This is the matter to be addressed by this court. In fact, the majority answers the assignment of error by pointing out that the trial court never made such a finding, but then the majority continues with the gratuitous observation that if the trial court did disregard the radar testimony, that would have been erroneous. This is an advisory opinion by the majority. That question was not raised by appellant or briefed by either party. Under these circumstances this court should not attempt to take a position on the issue.

The second thing I find wrong with the position taken by the majority is that I know of no authority on the part of this court to tell a trier of fact what evidence must be considered in arriving at the verdict. The trier of fact assigns weight and credibility when listening to the testimony. There are a number of considerations which the trier of fact can apply to the testimony of any witness in making those determinations. The demeanor of the witness on the stand, the tone of

voice used in responding to questions, the conviction with which the answer is given are just a few of those considerations which do not come forward to this court as a part of the printed testimony of the witness. Therefore, we cannot tell the trial court what testimony must be considered in any case.