[Cite as *N. Kingsville v. Carter*, 2021-Ohio-242.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| VILLAGE OF NORTH KINGSVILLE, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0019** |
| DIANA J. CARTER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court, Eastern District, Case No. 2019 TRD 01285 E.

Judgment: Affirmed in part and reversed and vacated in part.

*Gary L. Pasqualone*, Curry and Pasqualone, 302 South Broadway, Geneva, OH 44041 (For Plaintiff-Appellee).

*Malcolm S. Douglas*, 113 North Chestnut Street, Jefferson, OH 44047 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Diana J. Carter, appeals from the judgment of the Ashtabula County Court, Eastern District, finding her guilty of speeding, failure to wear a safety belt, and littering. For the following reasons, we affirm in part and reverse in part the judgment of the lower court and vacate Carter's conviction for speeding.

{¶2} On August 16, 2019, Carter was issued a citation for speeding, a minor misdemeanor, in violation of North Kingsville Codified Ordinance 333.03; failure to wear a safety belt, a minor misdemeanor, in violation of North Kingsville Codified Ordinance

337.27(b)(1); and littering from a motor vehicle, a minor misdemeanor, in violation of North Kingsville Codified Ordinance 331.42.

{¶3} A bench trial was held on February 24, 2020, at which the following testimony was presented:

{¶4} Chief Shannon Krenisky of the Village of North Kingsville Police Department testified that he was performing traffic patrol with other officers on August 16, 2019, sitting in a parking lot on Route 20. A "Handheld Scout Radar" was utilized by the officers, which was calibrated after each traffic stop. Chief Krenisky observed Carter traveling on the road "much faster than" 35 miles per hour, the posted speed limit, and he estimated her speed at 48 miles per hour. The handheld radar was activated and showed Carter, who was driving the only car on the road "right there," was traveling 49 miles per hour. Chief Krenisky explained that he was sitting in his car during his observations, and the handheld radar device was held by another officer, Officer Kirk, who was standing about three feet away, outside of Chief Krenisky's vehicle. Chief Krenisky testified that he was close enough to observe and hear the radar device. Carter, acting pro se, inquired about Officer Kirk's qualifications, to which Krenisky responded he had been an officer for over one year.

{¶5} Chief Krenisky followed Carter until reaching an intersection, where he observed her throw a cigarette butt out the window, and then stopped her vehicle to issue a ticket. He also testified that Carter had not been wearing a seatbelt when driving by or when she was stopped.

{¶6} In her testimony, Carter questioned why the officer who had been operating the radar had not testified. She also denied committing the offenses and stated that another car was passing her, which she believed the radar had clocked.

2

{¶7} At the conclusion of the trial, the court found Carter guilty of all three offenses and issued a Journal Entry which ordered her to pay a $100 fine for speeding, $50 for littering, and $55 for the seat belt violation, as well as costs. Following Carter's filing of a notice of appeal, this court remanded the matter for the lower court to issue a judgment that states the fact of the conviction as well as the sentence. On June 4, 2020, the trial court issued a compliant entry that stated the offenses for which Carter was convicted and the penalties referenced above.

{¶8} On appeal, Carter raises the following assignments of error:

{¶9} "[1.] The Village of North Kingsville [f]ailed to introduce the necessary evidence that the radar machine operator was properly trained and certified in the use of the machine.

{¶10} "[2.] Visual observation testimony of the Appellant's speed cannot be used as the sole means of establishing proof of speeding for a conviction.

{¶11} "[3.] Appellant's convictions fell against the manifest weight of the evidence for the charge of speeding."

{¶12} Since Carter's arguments are interrelated and discuss the proof required to obtain a speeding conviction, we will address them jointly. Carter contends that the radar evidence was not properly admitted since no testimony was presented that the radar operator was trained and certified in the use of the machine and, thus, there was no proper evidence in the record to support a conviction for speeding.

{¶13} Where a defendant has raised a manifest weight argument while challenging the qualifications of the operator of a radar device, courts have evaluated whether there is sufficient evidence, "'[i]nasmuch as a court cannot weigh the evidence unless there is evidence to weigh * * *.'" (Citation omitted.) *State v. Freiteg*, 9th Dist.

3

Wayne No. 07CA0082, 2008-Ohio-6573, ¶ 12. Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶14} "In order for a person to be convicted of speeding based on radar evidence, evidence must be introduced that the radar device is scientifically reliable * * *[,] that the device is in good working condition, as well as accurate, and that the officer who used the device is qualified to administer it." *State v. Bayus,* 11th Dist. Geauga No. 2005-G-2634, 2006-Ohio-1684, ¶ 14, citing *East Cleveland v. Ferell*, 168 Ohio St. 298, 301, 154 N.E.2d 630 (1958). "[T]he officer's testimony with respect to his or her qualifications and experience * * * is sufficient to establish that he or she is qualified to use the radar device." (Citation omitted.) *State v. Kress,* 11th Dist. Trumbull No. 2007-T-0075, 2008-Ohio-1658, ¶ 33.

{¶15} Here, the facts that the radar device is scientifically reliable and was in working condition are not in question and Chief Krenisky testified as to the calibration of the radar device. *See New Middletown v. Yeager*, 7th Dist. Mahoning No. 03 MA 104, 2004-Ohio-1549, ¶ 12 (testimony of calibration is sufficient to establish the device is working properly). The sole question is whether the qualifications of the officer using the

4

device were demonstrated. Chief Krenisky testified that he had received training and certification in the use of radar devices. However, he was not the one who held the handheld radar device. Rather, this was another officer, Officer Kirk, who did not testify at trial. When Chief Krenisky was asked about Officer Kirk's qualifications to operate the radar device, he testified only that Kirk has "been a full-time officer with North Kingsville for over a year."

{¶16} The case law addressing the requirement to prove an officer is "qualified" states that the prosecution must demonstrate the qualifications of the officer "using," "operating," or "administering" the radar device. *Bayus* at ¶ 14 (evidence must show that "the officer who used the device is qualified to administer it"); *State v. Sferra*, 11th Dist. Lake No. 2016-L-013, 2016-Ohio-7161, ¶ 6 ("the witness using the device must be qualified to operate the device through training and experience"); *Cleveland Heights v. Katz*, 8th Dist. Cuyahoga No. 79568, 2001 WL 1557774, * 3 (Dec. 6, 2001) (the court must determine that "the police officer properly operated and read the radar device"). Here, Chief Krenisky did not actually hold the device while it was being used, aim it toward Carter's vehicle, or take any other actions to operate the device or administer its use in relation to Carter's vehicle. While we recognize Chief Krenisky's testimony that he was able to see and hear the device from his vehicle as he was three feet away from Officer Kirk and North Kingsville's argument that he was "in essence" using the radar, we do not believe this constitutes operating or administering the radar device. Given that this was a handheld device, we cannot say that operator error could not have occurred, which is a rationale for requiring evidence of the qualifications of the operator. The record is devoid of evidence to demonstrate qualifications that show Officer Kirk's prior use of the radar or proper training on its use and operation. Merely being an officer for "over one

5

year" is not sufficient evidence of qualification to operate a radar device.

{¶17} Where the qualifications of the officer using the radar device are not demonstrated, speeding convictions have been vacated as unsupported by sufficient evidence. *Yeager* at ¶ 13; *see also Brook Park v. Rodojev*, __ Ohio St.3d __, 2020-Ohio-3253, __ N.E.3d __, ¶ 18 (challenges relating to the officer's qualifications to use a speed-measuring device implicate questions of sufficiency of the evidence). Given the complete lack of evidence to support the qualifications of the operator of the radar device, we hold that the speeding conviction was based on insufficient evidence.

{¶18} North Kingsville argues that Chief Krenisky's observation of the use of and reading on the radar device was sufficient since he testified to his proper qualifications. No authority is cited for the proposition that an officer observing the radar reading, but not administering the device, can demonstrate his qualifications rather than those of the operator of the device. Of note, in all of the foregoing cases discussing the procedure for determining qualifications of the officer using the radar, the officer actually using or operating the radar, rather than merely watching the administration of the radar device, testified. North Kingsville cites to R.C. 4511.091(A), which provides that a "driver of a motor vehicle that has been checked by radar * * * may be arrested until a warrant can be obtained, providing the arresting officer has observed the recording of the speed of the motor vehicle * * * or has received a radio message from the officer who observed the speed." This demonstrates only that an arrest is proper when an officer is aware of a speeding violation supported by radar, not that a conviction may be maintained without presentation of the proper qualifications of the radar device user. If nothing more were needed to obtain a conviction, the necessity of this statutory provision would be questionable.

6

{¶19} We recognize the existence of authority for the proposition that the qualification of an observing officer can be utilized in certain circumstances to allow the admission of results of a radar device, although he was not the one administering such device. In *State v. Ferrier*, 105 Ohio App.3d 124, 663 N.E.2d 729 (3d Dist.1995), a new state trooper, Trooper Reiff, who was being trained by a second officer, Trooper Drake, "utilized" the radar meter to clock the defendant's speed. While the trial court found that Reiff was not established to be a qualified operator of the radar, the appellate court held that "any rejection of the radar testimony by the trial court would be erroneous as against the weight of the uncontroverted evidence" since Drake had personally observed the entire incident, including use of the radar, testified that Reiff had "done things properly" in utilizing the equipment, and there was no evidence to otherwise indicate the device was used improperly. *Id.* at 125-126. We find that the present case is distinguishable. In *Ferrier*, both officers testified, which was not the case here. While Chief Krenisky testified that he was able to observe the radar device and hear the sounds it emitted, he did not specifically testify that Officer Kirk operated it in accordance with proper procedures, only that he had "no doubt" the car was clocked at 49 miles per hour and that he was close enough to be able to observe the use of the radar device. Further, Carter testified that an SUV was passing her near the area she was clocked and she believed that may have been the vehicle speeding, which is at least some evidence questioning proper operation of the radar. Finally, it is worth noting that the device used here was handheld while this does not appear to be the case in *Ferrier*.

{¶20} Next, as to the argument that visual observation of speeding is not sufficient to obtain a conviction, appellee does not refute this. Pursuant to R.C. 4511.091(C)(1), "[n]o person shall be * * * convicted of a violation of any provision of divisions (B) to (O)

7

of section 4511.21 or section 4511.211 of the Revised Code [speed limit violations] or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle * * *." Thus, the conviction could not be supported based on Chief Krenisky's visual estimate of speeding and there is no evidence in the record sufficient to support a verdict of guilty on the speeding charge. Further, to the extent that the visual estimation argument is raised in the second assigned error, that assignment has merit.

{¶21} Finally, Carter contends, without supporting substantive argumentation, that the proper exclusion of the radar evidence "leads to the entire traffic stop and the resulting additional offenses being a result of an illegal traffic stop" and all three convictions should be reversed.

{¶22} The proper means to challenge the validity of a stop for the purposes of excluding other evidence or offenses is through a motion to suppress. A defendant "waive[s] issues concerning the propriety of the stop by failing to file a motion to suppress any evidence gained therefrom." *State v. Donkers*, 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶ 128 (11th Dist.). No such motion was filed here and thus, the issue of the stop being "illegal" was waived. Furthermore, the fact that a conviction may not be maintained for the charge that was the basis of the stop alone does not invalidate the stop. *State v. Emerick,* 4th Dist. Washington No. 06CA45, 2007-Ohio-4398, ¶ 15 ("[a] traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance"); *see also Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15 ("that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably

8

in stopping and citing him for that offense"). The fact that the evidence failed to prove Officer Kirk was qualified to operate the radar device does not mean that he was not so qualified or that Chief Krenisky acted unreasonably in stopping Carter. Finally, the testimony appears to indicate that the littering offense occurred prior to the stop, as Chief Krenisky testified he pulled out, followed Carter, caught up to her stopped at an intersection where she was going to turn southbound, watched her throw a cigarette butt out the window, and, "after she made the turn or while she's making the turn" initiated his overhead lights and made the stop. A littering offense alone would have justified a stop as well. *State v. Barden*, 7th Dist. Columbiana No. 2000-CO-35, 2001 WL 315263, * 2 (Mar. 30, 2001).

{¶23} The first, second, and third assignments of error are with merit in part, to the extent discussed above. Carter's speeding conviction is reversed and vacated and her convictions for littering and the seat belt violation are affirmed.

{¶24} For the foregoing reasons, we affirm in part and reverse in part the judgment of the lower court and vacate Carter's conviction for speeding. Costs to be taxed against the parties equally.

TIMOTHY P. CANNON, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

9