[Cite as *State v. Jarosz*, 2013-Ohio-5839.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-P-0050** |
| JOHN F. JAROSZ, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R2012 TRC 14949.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Kristina Drnjevich,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*A. Dale Naticchia,* 4141 Rockside Road, #230, Seven Hills, OH 44131 *(For Defendant-Appellee).*

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, the state of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, granting the motion to suppress of appellee, John F. Jarosz. At issue is whether the state trooper was authorized in stopping appellee for speeding and in ordering him to exit his vehicle for field sobriety tests. For the reasons that follow, we affirm.

{¶2} Appellee was charged by citation with speeding, a minor misdemeanor, in violation of R.C. 4511.21(A), and operating a motor vehicle under the influence of

alcohol, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(d). Appellee pled not guilty. He subsequently filed a motion to suppress in which he argued that the state trooper lacked reasonable suspicion to stop him and also that the trooper lacked probable cause to order him to exit his vehicle to perform field sobriety tests.

{¶3} The trial court held a suppression hearing. Trooper John Lamm of the Ohio State Highway Patrol testified that on November 3, 2012, at about 11:30 p.m., he was on routine patrol driving his cruiser northbound on State Route 44 in Rootstown Township. He said a car was in front of him driving in the same direction on Route 44. Based on a "visual estimation," he said the car was travelling in excess of the 45 mph speed limit. He paced the car travelling at 52 mph, but said the speed was fluctuating and he never got a steady pace so he continued to follow the car.

{¶4} Trooper Lamm said that once he and the driver of the vehicle, later identified as appellee, crossed into the 40 mph zone near Hartsville Road, he again paced appellee. In doing so, he activated his rear radar, which determined the speed of his cruiser.

{¶5} Trooper Lamm then focused on keeping the same distance between his cruiser and appellee's vehicle. He testified he did so for 12 seconds until both vehicles reached Tallmadge Road, at which time he determined appellee's speed to be 48 mph. He said he was "a hundred percent positive that [he] had a good speed pace on him and [he] logged a speed pace of 48 miles an hour in a 40 zone."

{¶6} Trooper Lamm said he then decided to stop appellee for speeding. He started to catch up with him and activated his overhead lights. Appellee pulled over and the trooper stopped directly behind him. The trooper exited his cruiser and approached

2

the passenger side of appellee's car. He made contact with appellee and the passenger in the front passenger seat. The trooper detected a strong odor of alcoholic beverage coming from the interior of the car, but he could not determine which occupant was the source of the smell.

{¶7} The trooper asked the occupants where they were coming from and they both said the Dusty Armadillo, which is a nearby bar. The trooper asked appellee for his driver's license and appellee handed it to the trooper through the front passenger window. The trooper told appellee he stopped him because he was speeding.

{¶8} The trooper then walked over to the driver's side of appellee's car and saw that appellee's eyes were "glassed over." The trooper continued to detect a strong odor of alcohol coming from the interior of the car, but still could not determine its source. As a result, the trooper had appellee exit his car and come with him to his cruiser. The state asserts in its brief that the trooper "asked Jarosz to get out of the vehicle to perform field sobriety tests." The trooper had appellee sit in the front passenger seat and the trooper sat in the driver's seat. In the cruiser, the trooper confirmed that appellee's eyes were glassy. Further, as appellee was speaking, the trooper detected a strong odor of alcoholic beverage coming from his breath. The trooper then had appellee perform field sobriety tests and subsequently arrested him. The result of appellee's breath test at the station was .088.

{¶9} On cross-examination, Trooper Lamm said that in order to determine an offender's speed using the pace method, it is necessary to maintain the same distance between his cruiser and the offender's vehicle. Then, once the trooper determines his own speed, he can determine the offender's speed. The trooper said that if he was going faster than appellee while he was trying to pace him, he would not have been

3

able to obtain a good pace because he would not be maintaining the same distance. However, Trooper Lamm said there is no specific minimum amount of time he is required to pace a vehicle in order to obtain an offender's speed.

{¶10} While observing a video recording of the stop during cross-examination, Trooper Lamm said it shows that as soon as he and appellee crossed into the 40 mph zone, he had a good pace on appellee and maintained the same distance. He said that after he obtained appellee's speed, the video shows he started to gain on appellee and then stopped him.

{¶11} Trooper Lamm said that appellee's speech was not slurred. He answered all questions appropriately and he was cooperative.

{¶12} Following the hearing, the trial court entered judgment granting appellee's motion to suppress. The court found that, "based on the video of the stop, * * * Trooper Lamm did not maintain an equal distance from the Defendant's vehicle while pacing the Defendant. Therefore, Trooper Lamm had no grounds to stop the Defendant * * *."

{¶13} The state appeals the trial court's judgment, asserting two assignments of error. For its first assigned error, the state contends:

{¶14} "The Portage County Municipal Court erred in granting a motion to suppress. The trial court's finding that the trooper had no grounds to stop the defendant was premised on an incorrect legal analysis of the original stop."

{¶15} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and is in the best position to resolve factual questions and assess the credibility of the witnesses. *Id.*; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "[T]he trier

4

of fact * * * is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." *State v. Dach*, 11th Dist. Trumbull Nos. 2005-T-0048 and 2005-T-0054, 2006-Ohio-3428, ¶42. "[T]he factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Warren v. Simpson*, 11th Dist. Trumbull No. 98-T-0183, 2000 Ohio App. LEXIS 1073, *8 (Mar. 17, 2000). An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by some competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Moreover, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Warren, supra*. Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶16} Further, a stop is constitutional if it is supported by probable cause. *Ravenna v. Nethken*, 11th Dist. Portage No. 2001-P-0040, 2002-Ohio-3129, ¶30-31.

{¶17} Moreover, if a police officer observes any traffic law violation, sufficient grounds exist for the officer to stop the vehicle. *State v. Wojtaszek*, 11th Dist. Lake No. 2002-L-016, 2003-Ohio-2105, ¶16, citing *State v. Brownlie*, 11th Dist. Portage Nos. 99-P-0005 and 99-P-0006, 2000 Ohio App. LEXIS 1450, *6 (Mar. 31, 2000). Where a police officer witnesses a minor traffic violation, the officer is justified in making a limited stop for the purpose of issuing a citation. *Brownlie, supra*, citing *State v. Jennings*, 11th Dist. Trumbull No. 98-T-0196, 2000 Ohio App. LEXIS 800, *8 (Mar. 3, 2000).

{¶18} The state argues that the trial court erred in not considering the totality of the circumstances because the court only considered the video. The state's argument is based on the trial court's finding in its judgment that, "based on the video of the stop,

* * * Trooper Lamm did not establish an equal distance from [appellee's] vehicle while pacing [appellee]."

{¶19} However, there is nothing in the court's judgment suggesting that the court did not consider all the circumstances surrounding the stop and all evidence presented, including Trooper Lamm's testimony, in making its ruling. To the contrary, the trial court in its judgment entry recounted Trooper Lamm's testimony. The court found that the trooper testified he paced appellee traveling 48 mph in a 40 mph zone and, as a result, he stopped appellee for speeding. However, the court found that, based on its review of the video of the stop, the trooper did not maintain an equal distance from appellee's vehicle while pacing him. Thus, while the trial court considered the trooper's testimony, he obviously found that it was not supported by the video and that it was therefore not credible.

{¶20} As noted above, the trial court as the trier of fact is in the best position to evaluate the credibility of the witnesses because it observes the demeanor, voice inflection, and gestures of the witnesses. *Dach, supra.* The video of the stop was admitted in evidence. The court was thus entitled to consider the video to determine whether it supported or contradicted the trooper's testimony. Our review of the video demonstrates it is far from a model of clarity. Such recordings are often extremely fast-paced, poorly lit, shaky, and taken from less than an ideal perspective. The video at issue here is no exception. The state argues that the section of the video that supports the trooper's testimony is between 11:09:30 and 11:09:42. However, the video can be seen as both supporting and contradicting the trooper's testimony that he obtained a steady pace during this period. As the trier of fact, the trial court was entitled to determine, as it obviously did, that the video contradicted the trooper's testimony and

6

that his testimony was thus not credible. While we might not have reached the same conclusion as the trial court, due to the deference this court must give the trial court in its role as trier of fact, we are bound to interpret the evidence in a manner consistent with the trial court's ruling. *Warren*, *supra*.

{¶21} We therefore hold that the trial court did not err because its consideration of the circumstances was not limited to the video. Since the court's finding that Trooper Lamm's testimony was not credible was based on other evidence presented in the case, i.e., the video, the trial court's finding was supported by competent, credible evidence. Accepting as we must the trial court's finding regarding the trooper's credibility, we cannot say the court erred in ruling that the stop was not authorized.

{¶22} The state's first assignment of error is overruled.

{¶23} For its second assigned error, the state alleges:

{¶24} "The Portage County Municipal Court erred in granting a motion to suppress. The court's finding that a trooper lacked sufficient grounds to require a driver to exit his vehicle to investigate whether the driver was under the influence was premised on an incorrect legal analysis of the original stop and continued detention to investigate the possible OVI."

{¶25} The state argues that because appellee was lawfully detained for a traffic violation, Trooper Lamm was authorized to order him to exit his vehicle, pursuant to *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). However, because we hold the trial court did not err in finding that Trooper Lamm lacked authority to stop appellee, the trooper did not have authority to require appellee to exit his vehicle. This is true whether the trooper had appellee exit his vehicle due to the alleged speeding offense, pursuant to

*Mimms*, or for the trooper to perform field sobriety tests, pursuant to *State v. Evans*, 127 Ohio App.3d 56, fn. 2 (11th Dist.1998). The state's argument is therefore moot.

**{¶26}** The state's second assignment of error is overruled.

**{¶27}** For the reasons stated in the opinion of this court, the assignments of error lack merit. It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

TIMOTHY P. CANNON, P.J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶28}** I disagree with the majority's conclusion that the dashboard video was competent and credible evidence supporting the trial court's conclusion "that Trooper Lamm did not maintain an equal distance from the Defendant's vehicle while pacing the Defendant."

**{¶29}** This court has often recognized that "Ohio courts have held that a police officer's visual perception that a motor vehicle was speeding, coupled with years of experience, constitutes specific and articulable facts which provide the police officer with reasonable grounds to make an investigatory stop." *State v. Lawless*, 11th Dist. Portage No. 98-P-0048, 1999 Ohio App. LEXIS 2941, 7-8 (June 25, 1999) (cases cited).

**{¶30}** It should also be emphasized that "the trial court only needed to determine whether the stop was supported by a reasonable, articulable suspicion of criminal activity." *State v. Deegan*, 7th Dist. Belmont No. 05 BE 18, 2007-Ohio-1122, ¶ 13. "It did not have to find evidence beyond a reasonable doubt." *Id.* (cases cited).

8

**{¶31}** In the present case, Trooper Lamm testified unequivocally that Jarosz was speeding. Lamm's attention was first drawn to Jarosz due to his speed. Initially, Lamm "did a visual estimation and estimated that his speed was in excess of the 45 mile per hour zone." Lamm attempted to pace Jarosz in the 45 mile per hour zone and determined his speed to be about 52 miles per hour, but Lamm was uncomfortable with that determination because Jarosz' "speed was fluctuating back and forth."

**{¶32}** Once Jarosz crossed into a 40 mile per hour zone, Trooper Lamm was able to pace his vehicle for between 5 and 12 seconds:

**{¶33}** [O]nce we got down into the 40 zone, I was a hundred percent positive that I had a good speed pace on him and I logged a speed pace of 48 miles in a 40 zone. * * * I had my radar on. I actually put it in stationary mode and I activate the rear radar. When I do that, the rear radar picks up my patrol speed on my radar unit, which is right in front of me. And then on my computer I have a handheld remote where I can lock my speed as it goes in there. My speed's still going, but I can lock it in there also. * * * But doing it with the radar, that eliminates me looking at the speedometer * * *. I'm strictly able to focus on the gap that I have in between him.

**{¶34}** The trial court discounts Trooper Lamm's testimony "based on the video of the stop." The video evidence is equivocal. As the majority acknowledges, such recordings are "often extremely fast-paced, poorly lit, shaky, and taken from less than an ideal perspective." The majority further acknowledges that the video in the present case is inconclusive as to whether Lamm maintained a steady pace. *Supra* at ¶ 24 ("the video can be seen as both supporting and contradicting the trooper's testimony").

Contrary to the majority, I do not feel bound to interpret the doubtful video evidence as competent or credible to discredit Lamm's oral testimony. As the trier of fact, the trial court may choose to disbelieve Lamm's testimony, but if the court concludes that the testimony is discredited by video evidence, the video must actually contradict Lamm's testimony. It is not sufficient to say that the quality of the video is so poor that it could support either conclusion.

{¶35} The trial court further erred by concluding that Trooper Lamm "did not have sufficient grounds to require the Defendant to exit the vehicle to continue the investigation." The court held that additional indications of impairment were necessary before Lamm could require Jarosz to exit the vehicle.

{¶36} When Trooper Lamm ordered Jarosz out of the vehicle, he had noted Jarosz' excessive speed, glassy eyes, and a strong odor of alcohol coming from inside the vehicle. It was close to midnight on a Saturday night and Jarosz was coming from a bar. Since there was a passenger in the vehicle, Lamm was not able to particularize the source of the odor. Once out of the vehicle, Lamm determined that Jarosz was the source of the odor.

{¶37} It is well-established, under the authority of *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.E.2d 331 (1977), that "[o]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." (Citation omitted.) *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶ 17; *State v. Serafin*, 11th Dist. Portage No. 2011-P-0036, 2012-Ohio-1456, ¶ 23 (pursuant to *Mimms*, a police officer may order a lawfully

10

detained suspect out of a vehicle without "any constitutional quantum of suspicion") (citation omitted).

**{¶38}** With respect to the administration of field sobriety tests, this court has often found that facts, similar to those present here, are sufficient to administer the tests. *State v. Wiesenbach*, 11th Dist. Portage No. 2010-P-0029, 2011-Ohio-402, ¶ 24 (cases cited); *State v. Dierkes*, 11th Dist. Portage No. 2008-P-0085, 2009-Ohio-2530, ¶ 25.

**{¶39}** For the foregoing reasons, the decision to grant Jarosz' motion to suppress should be reversed. I respectfully dissent.