[Cite as *State v. Mundy*, 2021-Ohio-605.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 2019-TRC-9764 |
| | : | |
| DAVID MUNDY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of March, 2021.

. . . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, Assistant Prosecuting Attorney, Clark County
Prosecutor's Office, Appellate Division, 50 East Columbia Street, 4th Floor, Springfield,
Ohio 45502
      Attorney for Plaintiff-Appellee

REGINA R. RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} David Mundy appeals from his conviction for operating a vehicle under the influence of alcohol. He challenges the trial court's decision to overrule his motion to suppress evidence obtained following a traffic stop. Mundy argues that the officer's unaided visual estimation that he was speeding was not a lawful basis for the traffic stop. We conclude that a trained and experienced police officer's visual estimation of speed is sufficient to justify a traffic stop, and we affirm.

## I. Factual and Procedural Background

{¶ 2} Around 2:50 a.m. on August 30, 2019, Officer Greg Ivory was on general uniformed patrol in the City of Springfield traveling northbound on South Yellow Springs Street in a marked police SUV. He watched as a black car came toward him in the southbound lane. The posted speed limit was 35 m.p.h., but Officer Ivory visually estimated the car's speed at 50 m.p.h. After passing the police cruiser, the car continued to accelerate as it approached a set of railroad tracks, bouncing over them. To Ivory, it looked like the car was fleeing, as if it had just been stolen or was involved in a crime and was trying to leave the area as quickly as possible.

{¶ 3} Officer Ivory's SUV was not equipped with a radar or laser speed-measuring device, because he was on general patrol duty and not traffic enforcement. But he was a certified instructor on radar and laser speed detection and had over 17 years of law enforcement experience. Previously, he had been assigned to the police traffic division for four years and received additional training on speed detection and enforcement. He had been trained to accurately estimate the speed of a moving vehicle to within 3 m.p.h.

{¶ 4} After the car sped past, Officer Ivory did a u-turn and began to follow it. The

car appeared to keep accelerating, covering another two-and-a-half blocks before Ivory caught up. The car began to weave side to side within its lane, as though the driver were peering around the car in front of it in an attempt to make a pass. Once they cleared the next intersection, Officer Ivory put on his overhead lights to initiate a traffic stop.

{¶ 5} Mundy was identified as the car's driver. He showed signs of impairment, so Officer Ivory called the Ohio State Highway Patrol to assist with the investigation. Ultimately, Mundy was arrested and charged with two counts of operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and (A)(2).

{¶ 6} Mundy pleaded not guilty to both charges and filed a motion to suppress, which challenged the lawfulness of the traffic stop. A hearing was held at which Officer Ivory testified that he stopped Mundy because he was speeding and then accelerated after passing a marked police vehicle, as if he were fleeing a crime. On March 9, 2020, the trial court overruled the motion to suppress. Mundy then pleaded no-contest to both charges, but the charges were merged for sentencing.

{¶ 7} Mundy appeals.

## II. Analysis

{¶ 8} The sole assignment of error alleges that the trial court erred by overruling Mundy's motion to suppress.

{¶ 9} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions de novo." (Citations omitted.) *State v. Turner*, Ohio Slip Opinion No. 2020-Ohio-6773, __ N.E.3d __, ¶ 14.

{¶ 10} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. Further, '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 11} Mundy argues that the police officer did not have reasonable and articulable suspicion to justify the traffic stop, because (he contends) the officer's unaided visual estimation of his speed could not form a lawful basis for the stop. In support of his contention, Mundy cites R.C. 4511.091(C)(1), which pertinently provides:

No person shall be arrested, charged, or convicted of a violation of any provision of divisions (B) to (O) of section 4511.21 [speed limits on public roads] or section 4511.211 [speed limits on private roads] of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar. This division does not do any of the following:

* * *

(c) Preclude a peace officer from testifying that the speed of operation of a motor vehicle, trackless trolley, or streetcar was at a speed greater or less than a speed described in division (A) of

section 4511.21 of the Revised Code, the admission into evidence of such testimony, or preclude a conviction of a violation of that division based in whole or in part on such testimony.

This division was added in 2011 in response to the Ohio Supreme Court's holding the year before that "[a] police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed" if the officer is trained, certified, and experienced. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, syllabus. Under R.C. 4511.091(C)(1), a person cannot be "arrested, charged, or convicted" of speeding based solely on an officer's visual estimate of speed. The provision does not make an officer's estimate inadmissible; "it simply means that the estimate, by itself, [i]s not sufficient to prove a violation." *State v. Helke*, 2015-Ohio-4402, 46 N.E.3d 188, ¶ 17 (2d Dist.).

{¶ 12} Initially we note that the limit on visual speed estimation only applies to arrests, charges or convictions for violations of applicable prima facie speed limits referred to in R.C. 4511.2 (B) to (O). However, the general Ohio speed law, regardless of an established speed limit, is R.C. 4511.21(A), which requires that a vehicle cannot be operated at a "speed greater or less than is reasonable or proper" based on all the circumstances, or operated "at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." *Id*. R.C. 4511.091(C)(1)(c) specifically does not preclude testimony, or even conviction, under the general R.C. 4511.21(A) speed law. Therefore, what R.C. 4511.091(C)(1) prohibits is only an arrest, charge or conviction of the prima facie speed limit by mere visual estimation.

{¶ 13} Furthermore, we question whether R.C. 4511.091(C)(1) even applies in this case. Mundy was not "arrested, charged, or convicted" of speeding but of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19. *See State v. Ratliff*, 12th Dist. Butler No. CA 2019-09-163, 2020-Ohio-3315, ¶ 17 (asking the same question, but not providing an answer). But more importantly, R.C. 4511.091(C)(1) says nothing about traffic stops.

{¶ 14} The Fifth District has nevertheless held that the provision makes traffic stops based on a visual estimation of speed alone unlawful. In *State v. Miller*, 5th Dist. Fairfield No. 2012-CA-25, 2012-Ohio-6147, the appellate court concluded that "the notion that officers may use unaided visual estimates of speed for arrest, charging, and conviction have been superseded and overruled by legislation." *Id.* at ¶ 12. The court explained: "Allowing an officer to stop a vehicle on their subjective impressions that a vehicle is traveling in *slight excess* of the legal speed limit may permit officers to do just what the legislature had abolished. In other words, permitting an investigative stop when the officer cannot arrest or charge based upon his unaided visual estimate of speed in *slight excess* of the speed limit effectively eliminates any protection against profiling and arbitrary detentions." (Emphasis added.) *Id.* The court held that, had the legislature intended to permit traffic stops based on unaided visual estimates of speed, it "clearly would have allowed for the exception." *Id.* at ¶ 14. The Fifth District reaffirmed its holding in *State v. Laizure*, 5th Dist. Tuscarawas No. 2015 AP 10 0056, 2016-Ohio-3252.

{¶ 15} But does the fact that a conviction may not be made for the charge that was the basis of the stop make the stop unlawful? The Ohio Supreme Court has observed "that appellee could not be convicted of failure to obey a traffic-control device is not

determinative of whether the officer acted reasonably in stopping and citing him for that offense." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15. The Fourth District has similarly said that "[a] traffic stop may pass constitutional muster even where the state cannot convict the driver due to a failure in meeting the burden of proof or a technical difficulty in enforcing the underlying statute or ordinance." *State v. Emerick*, 4th Dist. Washington No. 06CA45, 2007-Ohio-4398, ¶ 15.

{¶ 16} The Eleventh District had also clearly (albeit, implicitly) disagreed with the Fifth District's holding on this issue. In *N. Kingsville v. Carter*, 11th Dist. Ashtabula No. 2020-A-0019, 2021-Ohio-242, the defendant appealed from her conviction for speeding, failure to wear a safety belt, and littering. The police chief testified that he and another officer were parked, performing routine traffic patrol. The chief was sitting in the patrol car, and the other officer was standing outside with a radar gun. The chief saw the defendant drive past and estimated that she was speeding. He looked over and saw that the radar gun showed the same. The chief followed the defendant, saw her throw a cigarette butt out the window, and then stopped her to issue a ticket, which was when he saw that the defendant was not wearing a seatbelt. The appellate court agreed that there was insufficient evidence to support the speeding conviction. The officer who had been operating the radar gun did not testify, so it was not shown that the officer was qualified. And based on R.C. 4511.091(C)(1), the chief's visual estimate alone could not support the conviction for violation of the prima facie speed limit. But the court rejected the defendant's argument that the exclusion of the radar-gun evidence made the traffic stop unlawful. As an initial matter, the court said that the issue of the stop being unlawful was waived because the defendant had not filed a motion to suppress. But even so, the court

added, "the fact that a conviction may not be maintained for the charge that was the basis of the stop alone does not invalidate the stop." *Id.* at ¶ 22, citing *Godwin* and *Emerick*.

{¶ 17} We do not believe that the fact that a conviction may not be had for the charge that was the basis of a stop, by itself, makes the stop unlawful. The lawfulness of a traffic stop is a separate constitutional question. As the Ohio Supreme Court has stated, "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 8.

{¶ 18} A visual estimation of a vehicle's speed can constitute reasonable and articulable suspicion. " 'Visual observation has long been held a valid means of determining the speed of a moving vehicle as long as the witness has a reliable opportunity to view the vehicle.' " *Barberton*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, at ¶ 15, quoting *State v. Harkins*, 4th Dist. Vinton No. 431, 1987 WL 15492, *3 (Aug. 5, 1987). And until R.C. 4511.091(C)(1) was added, the Ohio Supreme Court and a majority of appellate courts had held that a visual estimation of speed was sufficient to convict a person for speeding. *See id.* at ¶ 15, 23. Of course, the estimating officer's training and experience visually estimating vehicle speed is an important factor in the analysis. *See id.* at ¶ 15 ("In so holding, many of these courts have considered the testifying officer's training and experience visually estimating vehicle speed.").

{¶ 19} Thus, whether Mundy could have been convicted of violating the prima facie speed limit did not affect the analysis of the traffic stop's lawfulness. Officer Ivory's decision was prompted by his visual estimation of the car's speed, as well as the car's

apparent acceleration after passing a marked police cruiser, which suggested to Ivory that the car was fleeing. Ivory testified that he had been a police officer for over 17 years, that he was a speed-enforcement instructor, and that he had been trained to visually estimate a vehicle's speed. Based on that training and experience, Officer Ivory estimated that Mundy was going 15 mph above the posted speed limit. We are satisfied that the totality of the circumstances justified the traffic stop.

### III. Conclusion

{¶ 20} The sole assignment of error challenging the overruling of the motion to suppress is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P. J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Marc T. Ross
Regina R. Richards
Hon. Denise L. Moody