[Cite as *State v. Pullom*, 2025-Ohio-1701.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  V.

ANDRE M. PULLOM,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-29

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 24 CR 0004

**Judgment Affirmed**

**Date of Decision: May 12, 2025**

APPEARANCES:

    *John C. Filkins, III* for Appellant

    *Stephanie J. Kiser* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Andre M. Pullom ("Pullom"), appeals the July 5, 2024 judgment of conviction and sentence of the Seneca County Common Pleas Court. For the reasons that follow, we affirm.

{¶2} On January 10, 2024, the Seneca County Grand Jury indicted Pullom with a single count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(b), a fourth-degree felony. At an arraignment on January 19, 2024, Pullom entered a not-guilty plea to the charge in the indictment.

{¶3} On February 22, 2024, Pullom filed a motion to suppress arguing that the traffic stop and arrest were unconstitutional because the State Highway Patrol trooper lacked reasonable, articulable suspicion to effectuate the traffic stop and lacked probable cause to arrest Pullom. The State filed its brief in opposition on March 26, 2024. The parties appeared for a hearing on Pullom's motion to suppress on May 2, 2024. On May 31, 2024, the trial court filed a judgment entry overruling Pullom's motion to suppress.

{¶4} At a change-of-plea hearing on July 3, 2024, Pullom withdrew his not-guilty plea and entered a no-contest plea to the charge in the indictment. The trial court accepted Pullom's no contest plea and found him guilty as charged. The trial court proceeded directly to sentencing and imposed the jointly-recommended sentence of five years of community control with various conditions of supervision. The trial court filed its judgment entry of conviction and sentence on July 5, 2024.

{¶5} On July 29, 2024, Pullom filed his notice of appeal. He raises a single assignment of error for our review.

**Assignment of Error**

**The trial court erred when it denied Appellant's motion to suppress evidence.**

{¶6} In his assignment of error, Pullom argues that the trial court erred by denying his motion to suppress evidence. Pullom contends the initial traffic stop was an unconstitutional seizure because Trooper Weaver lacked reasonable, articulable suspicion to initiate a stop of Pullom's vehicle.

*Hearing Testimony*

{¶7} At the hearing on the motion to suppress, Trooper Weaver testified that on September 14, 2023 he initiated a traffic stop of a blue Chevy. (May 3, 2024 Tr. at 4-6). On direct examination, Trooper Weaver testified that while patrolling North Street in the City of Fostoria, he observed a blue Chevy pull out of the alley beside the Smokehouse Bar and drive past him. (*Id.* at 6). Trooper Weaver testified that he continued to observe the vehicle in his rearview mirror and noticed that the rear license plate light appeared to be burned out and not working, prompting him to turn his patrol vehicle around to catch up to the vehicle. (*Id.*). According to Trooper Weaver, as he turned his vehicle around, he observed the Chevy "accelerate quickly" from the stop sign with an estimated speed "above the 25-mile-an-hour posted speed limit." (*Id.* at 6). According to Trooper Weaver, he verified the

Chevy's speed by putting his radar in stationary mode while his patrol vehicle was stopped, which indicated the Chevy was traveling 35 miles per hour. (*Id.* at 6-7).

**{¶8}** Trooper Weaver initiated a traffic stop, and at the hearing, identified Pullom as the driver of the vehicle. (*Id.* at 6-8). Trooper Weaver testified that he observed Pullom's eyes were "red and glassy" with constricted pupils and Trooper Weaver detected the odor of an alcoholic beverage emanating from the Chevy. (*Id.* 7-8). Pullom admitted he had been drinking at the Smokehouse Bar and consented to field sobriety tests. (*Id.* at 8). Pullom also consented to a preliminary breath test which yielded a result in excess of the legal limit. (*Id.* at 9-10). Trooper Weaver testified that, as a result of the field sobriety tests and his observations, he placed Pullom under arrest on suspicion of OVI. (*Id.* at 10). When Trooper Weaver searched Pullom incident to arrest, he located suspected contraband on his person, which the lab subsequently determined was 5.1 grams of cocaine. (*Id.* at 11).

**{¶9}** On cross examination, Trooper Weaver testified that he recalled observing the Chevy at two stop signs. (May 3, 2024 Tr. at 14-15). Trooper Weaver stated that after stopping at the second stop sign, the vehicle accelerated quickly which Trooper Weaver estimated as going "well over the posted 25-mile-per-hour speed limit[.]" (*Id.* at 16). Trooper Weaver recalled that he brought his patrol vehicle to a complete stop at one of the stop signs and turned his radar into stationary mode just long enough to get a reading. (*Id.* at 16-18).

{¶10} However, after being presented with the body-worn camera and dashboard footage of the traffic stop, Trooper Weaver recognized that some of the details of his previous testimony were incorrect. Notably, Trooper Weaver acknowledged that he only observed Pullom stop at one stop sign, rather than two. (*Id.* at 25). Additionally, after reviewing the recordings, Trooper Weaver admitted that his patrol vehicle made a "rolling stop" rather than a full stop and, accordingly, could not accurately activate the stationary radar. (*Id.* at 25-26). Trooper Weaver maintained that when he initiated the traffic stop he suspected that that Pullom's license plate was not illuminated. (*Id.* at 30).

{¶11} On redirect examination, Trooper Weaver reiterated that he initiated the stop of the vehicle on suspicion of: (1) the vehicle's license plate being burned out and (2) excessive speed. (*Id.* at 33-34). With respect to the speed, Trooper Weaver testified that he first visually estimated the speed to be around 34 or 35 miles an hour. (*Id.* at 34). Trooper Weaver stated that, at the time, he believed that he had put his radar into stationary mode as he was stopping, but after reviewing the video footage, he did not believe that his vehicle was stopped long enough for him to be certain that that the 35 miles-per-hour reading from his radar was complete and accurate. (*Id.*). He stated that not making a complete stop of his patrol vehicle would "affect the mathematics inside [the radar]" and may "throw . . . off [the reading] a little bit." (*Id.* at 35).

**{¶12}** Trooper Weaver testified that he has specific training on visually estimating speed. (May 3, 2024 Tr. at 37-38). Further Trooper Weaver testified that he has issued hundreds, if not thousands of speeding citations and made initial speed estimations on "every single one of them." (*Id.* at 38). However, Trooper Weaver clarified that although he always uses visual estimations of speed, he "always confirms them with the radar" but conceded that he did not "properly" confirm his visual estimation in this instance. (*Id.* at 39).

**{¶13}** James Wyans ("Wyans") testified that he owned a 2008 blue Chevy Impala on September 14, 2023. (*Id.* at 41-42). According to Wyans, on September 13, 2023, he and Pullom met to discuss the possibility of Pullom purchasing the vehicle and, as part of the process, he allowed Pullom to borrow the vehicle. (*Id.* at 42-43). Wyans testified that he delivered the keys to the Chevy to Pullom around dusk and that, prior to leaving, he performed a check on the vehicle and observed that all of the lights worked on the vehicle. (*Id.* at 44). Wyans specifically recalled observing the license plate light illuminate. (*Id.*). Several hours later, he received a call from the Ohio State Highway Patrol requesting that he pick up the vehicle. (*Id.* at 45). The following day, Wyans again observed that the license plate light was functional. (*Id.*).

*Standard of Review*

**{¶14}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing,

the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* *See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

*Applicable Law*

{¶15} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." "'The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers in order to "safeguard the privacy and security of individuals against arbitrary [governmental] invasions."'" *State v. Kerr*, 2017-Ohio-8516, ¶ 12 (3d Dist.), quoting *State v. Carlson*, 102 Ohio App.3d 585, 592 (9th Dist. 1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391 (1979). "'The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *Id.*, quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991), citing *Illinois v. Rodriguez*,

497 U.S. 177, 110 S.Ct. 2793 (1990). "Thus, '[t]he touchstone of the Fourth Amendment is reasonableness.'" *Id.*, quoting *Jimeno* at 250.

**{¶16}** "Temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769 (1996), citing *Prouse* at 653, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975). Accordingly, "[a]n automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. To effect a constitutionally reasonable traffic stop, a law enforcement officer usually must have at least "'a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime,' including a traffic violation." *State v. Moiduddin*, 2019-Ohio-3544, ¶ 11 (3d Dist.), quoting *State v. Mays*, 2008-Ohio-4539, ¶ 7.

**{¶17}** "The level of suspicion required to meet the reasonable-suspicion standard 'is obviously less demanding than that for probable cause' and 'is considerably less than proof . . . by a preponderance of the evidence' but is 'something more than an "inchoate and unparticularized suspicion or 'hunch.'"'" *State v. Hawkins*, 2019-Ohio-4210, ¶ 20, quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868

(1968). To justify a seizure on the basis of reasonable suspicion, the law enforcement officer involved "'must be able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Bobo*, 37 Ohio St.3d 177 (1988), quoting *Terry* at 21.

*Analysis*

**{¶18}** In his assignment of error, Pullom alleges that Trooper Weaver did not have reasonable, articulable suspicion to make the traffic stop. Specifically, Pullom challenges Trooper Weaver's credibility, particularly in light of the inconsistencies between his testimony on direct examination and his testimony when cross-examined in concert with the video recording of the traffic stop. Pullom suggests the inconsistencies render his entire testimony unreliable. Accordingly, Pullom reasons that the trial court erred by denying his motion to suppress as it relied upon Trooper Weaver's testimony that he visually estimated the vehicle's speed. We disagree.

**{¶19}** In its judgment entry denying Pullom's motion to suppress, the trial court did not rely on testimony that was contradicted by the video evidence or the defense witness but, gave credence to Trooper Weaver's training and experience in support of his testimony regarding his visual speed estimation. The trial court stated as follows:

> [Trooper Weaver] testified that on September 14, 2023, he was on road patrol and observed a blue Chevy Impala driven by Defendant Andre M. Pullom rapidly accelerate. Trooper Weaver estimated the Defendant's speed to be in excess of the 25 mile per hour posted speed limit, a traffic violation. [Trooper Weaver] testified as to his training and experience with the Ohio State Highway Patrol in visually estimating vehicle speeds. [Trooper Weaver] proceeded to initiate the traffic stop of the Defendant, Andre M. Pullom's vehicle for that traffic violation. Trooper Weaver does not need to have a radar reading of the Defendant's speed, his visual observation is sufficient.

(Doc. No. 33).

**{¶20}** "[T]he trial court as the trier of fact is in the best position to evaluate the credibility of the witnesses because it observes the demeanor, voice inflection, and gestures of the witnesses." *State v. Jarosz*, 2013-Ohio-5839, ¶ 20 (11th Dist.). We give deference to the trial court in its role as the trier of fact and are bound to interpret the evidence consistently with the trial court's ruling. *Id.* Thus, the trial court was in the best position to assess the credibility of Trooper Weaver's testimony, and we will not disrupt the trial court's determination. *Id.*

**{¶21}** Furthermore, "[a] visual estimation of a vehicle's speed can constitute reasonable and articulable suspicion." *State v. Mundy*, 2021-Ohio-605, ¶ 18 (2d Dist.). "'"Visual observation has long been held a valid means of determining the speed of a moving vehicle as long as the witness has a reliable opportunity to view the vehicle."'" *Id.*, quoting *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 15, quoting *State v. Harkins*, 1987 WL 15492, *3 (4th Dist.).

{¶22} Trooper Weaver testified to his visual estimation of the vehicle's speed, traveling approximately 10 miles per hour over the posted speed limit in a 25-mile-per-hour zone. He also testified that he had been a highway patrol officer for seven years and has issued "hundreds, if not…thousands" of speeding citations and that he used speed estimation "on every single one of them" and detailed the training he has completed with respect to visual estimation of vehicle speed. (May 3, 2024 Tr. at 38). Thus, although Trooper Weaver's testimony, in some respects, conflicted with the video evidence, we nonetheless find that, under the totality of the circumstances, the trial court did not err by finding that the stop of the vehicle for the speed violation was based on reasonable, articulable suspicion. *See Mundy* at ¶ 19; *Barberton* at ¶ 15 ("In so holding, many of these courts have considered the testifying officer's training and experience visually estimating vehicle speed.").

{¶23} Pullom's assignment of error is overruled.

*Conclusion*

{¶24} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Seneca County Court of Common Pleas.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

Case No. 13-24-29

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.


_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm

-12-